ORIGINAL

*lodged proposed order*

1  STROOCK & STROOCK & LAVAN LLP
   JAMES E. FITZGERALD (State Bar No. 108785)
2  JASON R. BENDEL (State Bar No. 212774)
   BRIAN FODERA (State Bar No. 246391)
3  2029 Century Park East, Suite 1600
   Los Angeles, CA  90067-3086
4  Telephone: 310-556-5800
   Facsimile: 310-556-5959
5  E-mail: *lacalendar@stroock.com*

6  Attorneys for Plaintiff
   Arch Insurance Company
7

FILED
2011 FEB 25 PM 3:59
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ARCH INSURANCE COMPANY, a Missouri corporation, | Case No. CV11-1675 CAS (PJWx) |
| 13          Plaintiff, | EX PARTE APPLICATION BY PLAINTIFF ARCH INSURANCE COMPANY, INC. FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD STOCK AND PAUL PAPPAS IN SUPPORT THEREOF |
| 14    vs. | |
| 15 ALLEGIANT PROFESSIONAL BUSINESS SERVICES, INC., a Nevada corporation; NATIONAL HR COMPANIES, LLC, a Delaware Limited Liability Company with its principal place of business in Missouri; ARCHWAY INSURANCE SERVICES, LLC, a Pennsylvania Limited Liability Company; BRIAN BONAR, an individual; COLIN NIVEN BONAR, an individual; DAVID GOLDBERG, an individual; NORMAN TIPTON, an individual; JOHN CAPEZZUTO, an individual; DAVID JATHO, an individual; ROY HOMBS, an individual; and HUGH JAMES AGNEW, an individual, | Date:<br>Time:<br>Place:<br><br>[[Proposed] Order lodged concurrently] |
| 27          Defendants. | |

LA 51372797

Case 2:11-cv-01675-CAS-PJW   Document 4   Filed 02/25/11   Page 2 of 14   Page ID #:37

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Arch Insurance Company ("Arch"), respectfully applies to this Court ex parte for a temporary restraining order:

1) enjoining Defendants from issuing any binders, certificates or other purported documentary evidence of issuance of insurance by Arch;

2) ordering Defendants to rescind, cancel and/or retrieve any binders, certificates of insurance or other purported documentary evidence of issuance of insurance by Arch;

3) ordering Defendant Allegiant Professional Business Services, Inc. ("Allegiant"), to submit, within 7 days of the date of this Order, to an inspection and audit of its books and records, including in whatever hard copy or electronic format in which they may exist, that in any way relate to the 2008 Binder Agreement, the 2009 Binder Agreement and the 2010 Binder Agreement (between Arch and Allegiant), and the 2008 Policy, the 2009 Policy and the 2010 Policy (collectively, "Policies") issued by Arch to Allegiant; and

4) enjoining Defendants from destroying, shredding, deleting, spoliating or in any way taking any steps that would lead to spoliation of any and all documents, including in whatever hard copy or electronic format in which they may exist, that relate in any way to the 2008 Binder Agreement, the 2009 Binder Agreement and the 2010 Binder Agreement (between Arch and Allegiant), and the Policies issued by Arch to Allegiant, including, but not limited to, binders, certificates or other purported documentary evidence of issuance of insurance by Arch, employee lists, loss runs and claims files.

This TRO is needed to stop a massive fraud that threatens the security of workers and business owners in California and other states, and to prevent irreparable harm to those workers and businesses, as well as to Arch.

- 1 -

LA 51372797

Arch issued the Policy for workers' compensation coverage to Defendant Allegiant Professional Business Services, Inc. ("Allegiant"), a company that provides temporary employees to client companies, and which also runs a Professional Employer Organization ("PEO"). As stated in Arch's Complaint and in the declarations filed in support of this Application, Defendants Allegiant, Archway Insurance Services, LLC ("Archway") and National HR Companies LLC ("National HR") have never had any authorization from Arch to place or write insurance, or issue any insurance binders or certificates of insurance on behalf of Arch. Arch is informed and believes that these Defendants have issued, and/or caused to be issued, unauthorized insurance binders, certificates and other documentation purporting to evidence workers' compensation coverage under the Policy to numerous businesses in California as well as in other states. Thus, Defendants have caused third parties to believe they are covered under an Arch policy when no such coverage has ever been issued. Significantly, Defendants pocketed millions of dollars for such coverage from unsuspecting third parties and will continue to do so until stopped. In short, this emergency relief is needed to prevent further fraud on unsuspecting companies and workers, and to mitigate and prevent further economic damage to Arch.

To unearth and properly assess the extent of Defendants' fraud, and in accordance with its rights under the Policy, Arch has repeatedly requested an interim audit of Allegiant's files. Allegiant has refused and is preventing Arch from obtaining critical documentation needed to project losses, calculate additional premium that may be owed, set reserves and fulfill its obligations under the Policies. Arch will suffer irreparable harm with its customers, policyholders and producers if it is not allowed full access to Allegiant's files regarding the Policies so it can properly verify underwriting and payroll information, premium calculations and claims documentation. Arch will also suffer irreparable harm to its relationships and reputation with state regulators and departments of insurance if it is prevented from performing its auditing functions.

LA 51372797

Arch further requests that this Court issue an order to show cause why a preliminary injunction should not issue immediately after the TRO expires to continue enjoining the Defendants from issuing unauthorized documents purporting to evidence workers' compensation coverage under any Arch insurance policy and from taking any steps that would lead to spoliation of evidence. This preliminary injunction should remain in place pending a trial on the merits of the complaint for permanent injunctive relief and damages.

In support of this Ex Parte Application, Arch submits the attached Memorandum of Points and Authorities, and Declarations of Arch employees Richard Stock and Paul Pappas. The identity of Defendants' counsel is unknown to Arch at the time of submission of this application. As such, notice of the ex parte application pursuant to Local Rule 7-19.1 could not be given.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JAMES E. FITZGERALD
JASON R. BENDEL
BRIAN FODERA

By _James E. Fitzgerald_
James E. Fitzgerald
Attorneys for Plaintiff
Arch Insurance Company

- 3 -

LA 51372797

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Arch Insurance Company ("Arch") submits this Memorandum of Points and Authorities in support of its <u>ex parte</u> application for a temporary restraining order against Defendants Allegiant Professional Business Services, Inc. ("Allegiant"), Archway Insurance Services LLC ("Archway") and National HR Companies, LLC ("National HR") and their principals, pursuant to Federal Rule of Civil Procedure 65(b).

As detailed in the Complaint in this action, Arch has been a victim of a massive fraud in connection with its workers' compensation insurance business. Defendants took advantage of Arch's good name and standing in the insurance industry to fraudulently cause issuance of purported workers' compensation insurance, thereby creating significant and hidden financial exposure for employers, who were duped into believing in good faith that they had obtained appropriate coverage for their workers.

Defendants have attempted to tarnish Arch's image by using an insurer's pen to create coverage where none was authorized, intended or even known by Arch. In doing so, Defendants have defrauded third-party employers and their employees out of millions of premium dollars collected from those unsuspecting insureds who believe their workers are insured under Arch workers' compensation policies that Arch never authorized or issued. This application for a TRO is sought to stop this fraudulent scheme dead in its tracks so as to prevent further harm to employers, workers and Arch.

## II. BACKGROUND

Arch is an insurance company that provides various forms of insurance to businesses throughout the United States, including workers' compensation insurance. Defendant Allegiant operates two types of businesses: a temporary staffing unit and a Professional Employer Organization ("PEO"). The temporary staffing operation

- 1 -

LA 51372797

- 1 -

LA 51372797

provides Allegiant employees to third-party or client companies under contract to meet seasonal demand, shortages created by employee vacations and other temporary labor demands. The PEO operation is engaged in the business of assisting employers with hiring, payroll, benefits enrollment, administration and other tasks. Under the PEO arrangement, employer clients of Allegiant transfer their payroll, benefits, workers' compensation and human resources responsibilities regarding their clients to Allegiant. Defendant National HR is in the business of providing PEOs to employers and by doing so assists employers with payroll processing, benefits administration and managing workers' compensation insurance for their clients' employees. Defendant Archway is an independent insurance brokerage firm engaged in the business of procuring insurance for third parties through carriers with which it was aligned. Archway has never been authorized to sell or issue insurance on behalf of Arch, or to act as Arch's agent for any purpose.

In early 2008, early 2009 and early 2010, Arch and Allegiant entered into written Binder agreements (hereinafter referred to, respectively, as the "2008 Binder Agreement", the "2009 Binder Agreement" and the "2010 Binder Agreement") under which Arch would provide workers' compensation insurance to Allegiant and its employees pursuant to the terms and conditions of the aforementioned binder agreements. Allegiant was required to advise Arch of any potential changes in the operations of Allegiant and to obtain written approval from Arch prior to the change of operations to avoid either policy cancellation or a change in program terms. The binder agreements provided that all policies and premium are subject to audit, with final premiums to be adjusted based on the final audited exposure under the respective policy years.

In early 2008, pursuant to the 2008 Binder Agreement, Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9116700 ("2008 Policy") to Mercer Ventures, Inc. ("Mercer"), the predecessor of Allegiant, providing coverage for Mercer's temporary staffing operations. The 2008 Policy

-2-

LA 51372797

1. period was February 28, 2008, through February 28, 2009. The 2008 Policy was intended to insure only Mercer's temporary staffing employees, not its PEO operations or its clients' employees.

2. In early 2009, pursuant to the 2009 Binder Agreement, Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9154700 ("2009 Policy") to Mercer, effective February 28, 2009, through February 28, 2010. Like the 2008 Policy, the 2009 Policy was intended to insure only Mercer's temporary staffing employees, and not its PEO clients' employees.

3. In or about early March 2010, pursuant to, and based on, the 2010 Binder Agreement, Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9199300 to Allegiant (the "2010 Policy") for the Policy period February 28, 2010, through February 28, 2011. (The 2008 Policy, 2009 Policy and 2010 Policy are referred to collectively as the "Policies.") Like the 2008 Policy and the 2009 Policy, the 2010 Policy was intended to insure only Allegiant's temporary staffing employees, and not its PEO clients' employees.

4. Archway, which is in no way related to or affiliated with Arch, acted as Allegiant's insurance broker and agent in connection with the procurement, negotiation and maintenance of the binder agreements and the Policy.

5. In early February 2011, Arch became aware that Alltown Bus Service, Inc. ("Alltown") of Skokie, Illinois, had been provided with a purported insurance binder on Allegiant letterhead that states that Alltown was provided workers' compensation insurance with limits of $1,000,000 under the 2010 Policy effective January 21, 2011. The purported binder states that the annual premium for this workers' compensation is $318,020.00 and is due and payable to Allegiant, and that claims under such coverage should be notified to Allegiant.

6. Arch has never authorized any person or entity, including but not limited to Allegiant, or any Defendant named herein, to issue an insurance binder to Alltown under the 2010 Policy, or any other workers' compensation policy written by Arch.

- 3 -

LA 51372797

In or about early February 2011, Arch was also advised by American Business Insurance Services ("ABI"), a California insurance broker, that two of its clients, Global Paratransit, Inc. ("Global"), of Gardena, California, and Southland Transit, Inc. ("Southland"), of El Monte, California, had been provided with documentation purporting to evidence issuance of workers' compensation insurance under the 2010 Policy. Upon information and belief, these two companies paid approximately $2,900,000 in premiums to National HR for such purported insurance, and National HR and Allegiant have accepted said premium payments. Upon further information and belief, Global Paratransit and Southland Transit submitted workers' compensation claims for their employees directly to National HR and/or Allegiant, which thereafter gave notice of such claims to California state regulators and Arch, and, in doing so, falsely represented that they were workers' compensation claims of Allegiant employees. Upon information and belief, Arch paid such claims because they were represented to be claims arising out of injury to Allegiant's employees only – not employees of Global Paratransit and/or Southland Transit.

On February 22, 2011, Arch was advised by ABI that it had received a proposal dated March 19, 2010 from National HR purporting to offer coverage under the 2010 Policy for San Gabriel Transit ("San Gabriel"), a division of Southland Transit. The proposal states that workers' compensation coverage is provided by Arch Insurance Company and that coverage could be bound by submitting the signed quote form and paying the first months premium of $195,200 directly to National HR in Columbia, MO. Arch is informed and believes, and thereon alleges, that Southland Transit/San Gabriel Transit paid substantial monies to National HR during 2010 as premium for what it believed was workers' compensation coverage under the 2010 Policy underwritten by Arch.

Arch has never authorized any person or entity, including but not limited to Allegiant, National HR, Archway or any other Defendant named herein, to issue an insurance binder or any other evidence of insurance to Global Paratransit, Southland

- 4 -

1  Transit, San Gabriel Transit or any agent or broker of those entities under the 2010
2  Policy, or any other workers' compensation policy written by Arch, or to accept any
3  premium for such purported insurance.

4      Alltown, Global, Southland and San Gabriel are not listed affiliated companies
5  under the 2010 Policy. Arch has never been advised by Allegiant, Archway or
6  National HR that such companies are affiliated companies under the 2010 Policy.
7  Arch has never authorized or issued any insurance that would cover any of these
8  entities under the 2010 Policy.

9      Arch has never been paid, or offered payment for, any premium by Allegiant,
10 National HR or Archway for any workers' compensation insurance for Alltown,
11 Global, Southland or San Gabriel. Arch has never received any premium paid by
12 any of these entities to the Defendants or their agents, brokers or representatives.

13     Pursuant to the terms and conditions of the Policies, Arch is entitled to
14 perform an inspection and audit of Allegiant's files relating to the Policies and the
15 insurance thereunder. On or about January 19, 2011, Arch requested that Allegiant
16 allow it to conduct an audit of its files. However, Allegiant has now unilaterally
17 cancelled scheduled times to conduct such an audit and will not permit Arch to
18 perform such an audit of its files.

19 **III.   ARGUMENT**

20     **A.   Standard for a Temporary Restraining Order.**

21     The standard to obtain a TRO and a preliminary injunction are the same. See
22 Graham v. Teledyne-Continental Motors, Div. of Teledyne Indus., Inc., 805 F.2d
23 1386, 1388 (9th Cir. 1986). To obtain either form of relief, a plaintiff must show: (1)
24 a likelihood of success on the merits; (2) a likelihood of irreparable harm to the
25 plaintiff in the absence of preliminary relief; (3) that the balance of equities tips in
26 plaintiff's favor; and (4) the public interest favors granting relief. Winter v. Natural
27 Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).
28

LA 51372797

### 1. **Arch Is Likely To Succeed On The Merits.**

Arch is likely to show that Allegiant, National HR and Archway, in connection with the purported binding of insurance coverage, calculation of purported premium and adjustment of insurance claims, used in commerce the service-marked name of Arch Insurance Company and falsely represented to purported insureds that coverage had been bound with Arch and that Arch would pay workers' compensation claims sustained by their workers. Arch is in possession of documents on Allegiant letterhead, bearing the names of Allegiant personnel, that indicate to third parties that purported coverage was bound for them with Arch under the 2010 Policy. This use of Arch's name is improper, unauthorized and in violation of U.S. trademark laws. The unapproved use of Arch's name in this manner, on its face, deceives the general public as to the origin of the workers' compensation insurance coverage purported to be bound by Arch. Allegiant, National HR and Archway have never had any authorization from Arch to issue any insurance binders, certificates or other documentary evidence of insurance on behalf of Arch. Therefore, Arch is likely to succeed on the merits on its Lanham Act claim.

Arch is also likely to be able to show that Allegiant breached multiple obligations under the Policy. First, the Policies imposes an obligation on Allegiant to make payments of premium to Arch, subject to audit. Arch has demanded payment in accordance with its rights under the Policies, and Allegiant has not remitted the money owed. Second, the Policies requires Allegiant to submit to interim and/or final audits, and Allegiant has repeatedly stonewalled Arch in its attempts to invoke its rights to an audit under the agreement, thereby also delaying any collection by Arch of additional premium amounts owed under the Policies due to losses. Arch possesses correspondence showing that it first requested an audit in January 2011, and that Allegiant has refused to comply with the requests. Allegiant cannot offer any excuse for its nonperformance, and Arch is likely to succeed on the merits of its breach of contract claim.

LA 51372797

## 2. Arch Is Likely To Suffer Irreparable Harm.

Irreparable harm is presumed where defendants engage in acts or practices prohibited by a statute that provides for injunctive relief. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001). Section 1116(a) of the Lanham Act expressly provides for injunctive relief. See 15 U.S.C. § 1116(a); Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 fn. 3 (9th Cir. 1989) (in case of trademark infringement, harm presumed to be irreparable because monetary damages could not compensate for harm). Therefore, Arch enjoys a presumption of irreparable harm here because Allegiant, Archway and National HR have engaged in acts prohibited by the Lanham Act, a statute that provides for injunctive relief.

Even in the absence of a presumption, the unauthorized sale of insurance using Arch's name in violation of trademark laws will cause irreparable harm to Arch because it will adversely affect Arch's reputation and compromise its ability to operate in the marketplace. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 2568 (1975) (a substantial loss of business absent preliminary injunctive relief shows irreparable harm); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001) (threatened loss of prospective customers or goodwill constitutes irreparable harm supporting injunctive relief in a trademark suit); Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 67 (2nd Cir. 2007) (loss of current or future market share may constitute irreparable harm). Indeed, Arch suspects that the fraudulent binders/certificates of insurance of which it is aware at this point may be only the tip of the iceberg of a much larger scheme that could leave Arch facing significant exposure. If innocent workers and employers who believe they are covered on the basis of Defendants' misrepresentations are unable to recover for their claims because no actual coverage has been bound, Arch is likely to be blamed for their losses and may be forced to defend itself against litigation from those workers and employers as well as against investigations and inquiries by state regulators. Arch's reputation and good name is also damaged with

LA 51372797

state insurance departments and other governmental agencies that regulate the workers' compensation insurance business because of Defendants' unauthorized and fraudulent conduct. Finally, and most importantly, Defendants have created significant and hidden financial exposure for unsuspecting employers, who were duped into believing in good faith that they had obtained appropriate coverage for their workers – without the knowledge of the insurer supposedly providing the coverage for them.

Furthermore, Arch will suffer irreparable harm with its customers, policyholders and producers if it is not allowed the audit it is entitled to under the Policies. Arch requires full access to Allegiant's files regarding the Policies so it can properly verify underwriting and payroll information, premium calculations and claims documentation. In the absence of an audit, Arch will be unable to determine whether the Policies have been properly funded, leaving it open to significant losses if premiums have been underpaid by Allegiant. Arch will also suffer irreparable harm to its relationships and its reputation with state regulators and departments of insurance if it is prevented from performing its auditing functions.

### 3. The Balance Of Equities Tips In Arch's Favor.

The balance of equities weighs decisively in Arch's favor. If preliminary relief is not granted, Defendants will either continue their fraudulent scheme, creating additional risk and exposure for Arch and the employers and workers victimized by Defendants' misrepresentations, or commence destroying evidence of the fraud and statutory violations already committed so as to further hide its wrongful conduct. Furthermore, Arch is entitled to payment of premium and to inspection and audit under the Policies. Allegiant has no excuse for nonperformance.

Defendants will not be subjected to any hardship if relief is granted. First, Allegiant has an obligation to comply with the terms of the Policies. Therefore, ordering an audit and the payment of premiums owed will not impose any burden on Allegiant that it had not already agreed to bear when it entered into the contract with

Arch. Furthermore, ordering Defendants to cease issuing unauthorized insurance binders and other documentary evidence of false insurance is necessary to stop a fraudulent practice. Defendants clearly cannot be prejudiced by being ordered to stop illegal conduct – except that their ill-gotten gains may be halted. Finally, demanding that Allegiant and National HR refrain from taking any steps to spoliate evidence is merely ordering them to comply with the law and imposes no hardship on them whatsoever. Compliance with the law is not an undue hardship.

### 4. The Public Interest Favors Granting Relief.

Employers are required by law to maintain workers' compensation policies to provide wage replacement and medical benefits to employees who are injured in the course of employment. Workers rely on their employers to obtain and maintain proper coverage, and they gain peace of mind through the employers' assurances that coverage is in place. Workers' compensation insurance is closely regulated by the states to ensure that workers and their families are protected from financial calamity in the event of an unfortunate accident or injury sustained on the job. Indeed, there is a public interest in ensuring that employers maintain workers' compensation insurance and that such insurance be in place so that workers' claims will be covered under collectible insurance issued by reputable insurers.

Defendants took advantage of Arch's good name and reputation in the insurance industry to fraudulently cause issuance of purported workers' compensation insurance, thereby creating significant and hidden financial exposure for the employers, who were tricked into believing in good faith that they had obtained appropriate coverage for their workers. Defendants have defrauded third-party employers and their employees out of millions of premium dollars collected from those unsuspecting employers who believe their workers are insured under Arch workers' compensation policies that Arch never authorized or issued. There is an urgent public interest at stake here that militates in favor of immediate injunctive relief being granted.

LA 51372797

## IV. CONCLUSION

The Court must stop fraud in its tracks, especially when it threatens the financial security of workers and the whole basis for a workers' compensation system. For the foregoing reasons, injunctive relief is warranted and the Court should issue a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JAMES E. FITZGERALD
JASON R. BENDEL
BRIAN FODERA

By *James E. Fitzgerald*
James E. Fitzgerald
Attorneys for Plaintiff
Arch Insurance Company, Inc.

LA 51372797