STROOCK & STROOCK & LAVAN LLP
JAMES E. FITZGERALD (State Bar No. 108785)
JASON R. BENDEL (State Bar No. 212774)
BRIAN FODERA (State Bar No. 246391)
2029 Century Park East, Suite 1600
Los Angeles, CA 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
E-mail: *lacalendar@stroock.com*

Attorneys for Plaintiff
Arch Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH INSURANCE COMPANY, a Missouri corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ALLEGIANT PROFESSIONAL BUSINESS SERVICES, INC., a Nevada corporation; NATIONAL HR COMPANIES, LLC, a Delaware Limited Liability Company with its principal place of business in Missouri; ARCHWAY INSURANCE SERVICES, LLC, a Pennsylvania Limited Liability Company; BRIAN BONAR, an individual; COLIN NIVEN BONAR, an individual; DAVID GOLDBERG, an individual; NORMAN TIPTON, an individual; JOHN CAPEZZUTO, an individual; DAVID JATHO, an individual; ROY HOMBS, an individual; and HUGH JAMES AGNEW, an individual,<br><br>Defendants. | Case No. CV11-1675 CAS (PJWx)<br><br>RENEWED REQUEST BY PLAINTIFF ARCH INSURANCE COMPANY FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANTS ARCHWAY INSURANCE SERVICES, LLC, AND HUGH JAMES AGNEW |

LA 51414155

## I. INTRODUCTION

On February 25, 2011, Plaintiff Arch Insurance Company ("Arch"), pursuant to FRCP Rule 65, applied to this Court for a temporary restraining order enjoining all Defendants from, *inter alia*, writing, issuing and transmitting false insurance documentation to third parties regarding coverage under the Arch Policies issued to Allegiant Professional Business Services, Inc. ("Allegiant"). At the same time, the Court issued an order to show cause why a preliminary injunction should not also issue against the Defendants. On April 18, 2011, the Court conducted a hearing on the Order to Show Cause Re Preliminary Injunction, at which time the Court indicated it would be granting the Preliminary Injunction. Counsel for Defendants Archway Insurance Services, LLC ("Archway"), and Hugh James Agnew ("Agnew") (collectively, "Archway") objected to the imposition of the Preliminary Injunction as to Archway and indicated to the Court that they would be willing to enter into a stipulation with Arch in lieu of the Preliminary Injunction being issued against them. Arch's counsel advised the Court that it would try to work out a stipulation with Archway. However, several subsequent attempts to do so failed.

On April 26, 2011, this Court issued a Preliminary Injunction against Defendants Allegiant Professional Business Services, Inc., Brian Bonar, Colin Niven Bonar, Norman Tipton, David Goldberg, John Capezzuto, National HR Companies, LLC, David Jatho and Roy Hombs. The Court denied, ***without prejudice***, Arch's preliminary injunction application with respect to Archway, noting that "the Court does not address Archway's opposition in the instant order," and stating that said denial was subject to renewal if the parties failed to reach an agreement on a stipulation. Since no stipulation was reached between Arch and Archway, Arch hereby renews its request that the Court add Archway and Agnew to the Preliminary Injunction Order. Archway's reasons for being exempt from that Order are without merit and they run counter to the public interest.

-1-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086
LA 51414155

## II. ARGUMENT

### A. Standard For A Preliminary Injunction.

To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the plaintiff in the absence of preliminary relief; (3) that the balance of equities tips in plaintiff's favor; and (4) that the public interest favors granting relief. Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

In its April 26, 2011 Preliminary Injunction Order, the Court stated:

> "The Court concludes that a preliminary injunction should issue in this case. Plaintiff has demonstrated that there are at least serious questions going to the merits of the dispute, that the balance of hardships tips decidedly in plaintiff's favor, that there is a likelihood of irreparable injury and that the injunction is in the public interest."

Thus, the only question now is whether Archway and Agnew should be included in the preliminary injunction in furtherance of that public interest. The answer is "Yes" for the reasons set forth below.

#### 1. There Is A Likelihood That Arch Will Be Successful on the Merits Of Its Claims Against Archway and Agnew Since They Had A Significant Role In The Selling of Unauthorized Insurance.

Arch is likely to succeed on the merits as to Archway because, *inter alia,* Arch has shown that Archway is the party responsible for issuance of over 100 Acord certificates of liability[1] that were used by Allegiant and Archway to provide evidence

---

[1] Indeed, Archway provided Arch with a list in late January 2011 of over **300** companies for whom it issued a Certificate Of Liability under the 2010 Arch Policy issued to Allegiant. Arch was also provided a similarly-lengthy list of companies for whom Archway issued a Certificate of Liability under the 2009 Arch Policy issued to Allegiant. Most of those certificates have not been provided to Arch. Arch has

- 2 -

LA 51414155

of purported workers' compensation insurance coverage under the Arch Policies to third parties so as to make it appear that the workers' compensation insurer for these third parties is Arch. Archway argued at the Preliminary Injunction hearing that the certificates that Agnew signed were of no real consequence, and that somehow Archway has no responsibility because Archway never provided the certificates to any third party, only to Allegiant. At the April 28, 2011 hearing, the Court rightly expressed continued concern that third parties had been led astray into believing that they purchased Arch workers' compensation insurance, while no such insurance had ever been issued with the knowledge or authorization of Arch. One of the critical documents used to mislead these third parties, and their clients, were Acord Certificates of Liability Insurance signed by Agnew, who then provided them to Allegiant. Agnew and Archway, as experienced brokers, knew why they were being asked to give Allegiant these certificates and what Allegiant would use them for – to provide them to third parties so as to evidence, using their broker's imprimatur, that there was workers' compensation coverage in place through Arch with $1,000,000 limits in most cases.

Archway's attempt to now minimize the "effect" and meaning of the hundreds of certificates of liability given to third parties is not persuasive. What is persuasive is the objective effect such a certificate would have on the recipients (third parties) that are looking to secure coverage for their workers. That objective effect is an imprimatur of the principal (Agnew) and his brokerage firm (Archway) that claim to have secured workers' compensation coverage through an insurer (Arch) for the employees of the party named in the certificate (Allegiant's client), which party is authorized to provide that information to the certificate holder (typically a client of Allegiant's client's). That is the true effect of such a certificate.

An Acord Certificate of Insurance is a commonly used form to evidence insurance coverage for the listed insured, or its additional insured or designee.

---

requested that Archway and Allegiant provide copies of each certificate that was issued with respect to the 2009 and 2010 Policies.

- 3 -

LA 51414155

> "A 'certificate of insurance' is a document issued by an insurer or an authorized agent evidencing the existence of insurance. Typically, the certificate states the insurer, type of insurance, name(s) of the insured (including any additional insureds), policy limits, and the period and scope of coverage (e.g., whether limited to a particular construction project).
>
> \*\*\*
>
> Certificates of insurance are often required in transactions between the insured and third persons. For example, one party may want proof that the other party is insured; or such proof may be required to obtain a governmental license or permit. [See Ca Vehicle § 16450--applicant for license to operate commercial passenger vehicles must provide Department of Motor Vehicles with certificate of insurance as proof of financial responsibility]
>
> \*\*\*
>
> Alternatively, a certificate of insurance may be used to show that one party is an additional insured under the other's insurance policy. E.g., subcontractors on a construction project are often required to obtain a "certificate of insurance" from their insurers showing that the general contractor and/or project developer are "additional insureds" under the subcontractors' liability insurance policies (¶7:1408). [See Pardee Const. Co. v. Insurance Co. of the West (2000) 77 Cal.App.4th 1340, 1347, 92 Cal.Rptr.2d 443, 447, fn. 2] Another common use of certificates of insurance is in connection with group insurance policies. E.g., employees insured under a group health policy issued to their employer usually receive a "certificate of insurance" from the insurer."

California Practice Guide: Insurance Litigation (2010); Section 3.70, et. seq.

Thus, the broker's signing of the certificate and providing it to his client so that the client can use it with its own clients is a representation to third parties of the existence of insurance.

Archway's counsel, Mr. Thomas Gallardo, has advised Arch's counsel that Archway takes no position, at this time, as to whether the Arch Policies issued to Allegiant provide coverage for the Professional Employer Organization ("PEO") clients of Allegiant, as opposed to the temporary staffing clients of Allegiant. Prior to the filing of this litigation, Allegiant had always agreed with Arch that the Arch Policies were only intended to insure Allegiant's temporary staffing business and specifically did not cover non-Allegiant employees. In fact, in an e-mail from Defendant Niven Bonar, Allegiant's Chief Operating Officer, attached as an exhibit

- 4 -

LA 51414155

to his declaration in support of Allegiant's opposition to the Preliminary Injunction, Mr. Bonar states, "Our temporary staff is placed on assignment with coverage afforded to the staffed employees with Arch Insurance.  Our PEO client employees are provided coverage by either our Ullico or Guarantee Insurance Company [policies]."  See Exhibit B to Declaration of Niven Bonar in Opposition to Arch Insurance Company, Inc.'s Application for Preliminary Injunction at p. B-17.  If Archway is now suggesting that the Arch Policies provide coverage for non-Allegiant employees, whose employers contracted with Allegiant to provide PEO services, then Archway should say so instead of trying to dodge the issue.[2]

Archway's problem with challenging the fact that the Arch Policies only provide coverage for Allegiant's non-PEO business is that Archway and Agnew also know, through their involvement in and knowledge of the underwriting and coverage of each of the 2008, 2009 and 2010 Policies, that these Policies afforded coverage only to the temporary staffing part - not the PEO side - of Allegiant's business. Despite this fact, Archway, with Agnew's consent, issued the certificates of insurance to Allegiant's PEO clients.   Moreover, the certificates do not indicate that coverage under the  Policies is limited to employees of Allegiant.  Rather, in many instances, they indicate that they are actually issued to Allegiant's PEO clients.

While Archway may choose to now challenge the position that the Arch Policies only provide coverage for Allegiant's non-PEO business, what it cannot challenge is that the Arch Policies did not permit Allegiant to sell stand-alone workers' compensation coverage under an Arch policy to third parties, without consent or authorization by Arch.   That is exactly what was done with at least several accounts, if not many, that have been identified in connection with the Preliminary Injunction Order (e.g., Family Care, Global Paratransit, Southland Transit, etc.). In fact, certificates of liability ***signed by Mr. Agnew*** were provided to

---

[2] It is troubling that, given Allegiant's most recent filings with this Court, it may now be fudging its position on that issue – despite its prior admissions.

- 5 -

LA 51414155

those companies to evidence their employees' coverage for workers compensation claims under the Arch Policies.

In light of these facts, it is appropriate for Archway to be included in the Preliminary Injunction Order since it is the one, through its agent Agnew, that prepared, signed and sent the certificates to Allegiant, knowing that Allegiant would provide them to third parties to evidence coverage under the Arch Policy.  Archway and Agnew also knew when it prepared most of these certificates that they were for entities for which Allegiant was providing PEO services.  Since Agnew is the author and signatory of the original certificates, he and his brokerage firm are the correct parties to rescind and/or retrieve those misleading documents from innocent third-parties – in accordance with the Court's April 26, 2011 Preliminary Injunction Order.

### 2. **Arch Is Likely To Suffer Irreparable Harm Because Of Archway and Agnew's Conduct.**

Irreparable harm is presumed where defendants engage in acts or practices prohibited by a statute that provides for injunctive relief.  Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001).  Section 1116(a) of the Lanham Act expressly provides for injunctive relief.  See 15 U.S.C. § 1116(a); Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 fn. 3 (9th Cir. 1989) (in case of trademark infringement, harm presumed to be irreparable because monetary damages could not compensate for harm).  Therefore, Arch enjoys a presumption of irreparable harm here because Archway has engaged in acts prohibited by the Lanham Act, a statute that provides for injunctive relief.

Even in the absence of a presumption, the unauthorized issuance of insurance using Arch's name in violation of trademark laws will cause irreparable harm to Arch because it will adversely affect Arch's reputation and compromise its ability to operate in the marketplace.  See Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 2568 (1975) (a substantial loss of business absent preliminary injunctive relief shows irreparable harm);  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,

- 6 -

LA 51414155

240 F.3d 832, 841 (9th Cir. 2001) (threatened loss of prospective customers or goodwill constitutes irreparable harm supporting injunctive relief in a trademark suit); Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 67 (2nd Cir. 2007) (loss of current or future market share may constitute irreparable harm).

Arch suspects that the fraudulent binders/certificates of insurance of which it is aware at this point may be only the tip of the iceberg of a much larger scheme that could leave Arch facing significant exposure. If innocent workers and employers believe they are covered under fake insurance, Arch is likely to be blamed for their losses and may be forced to defend itself against litigation from those workers and employers as well as against investigations and inquiries by state regulators. Arch's reputation and good name is also damaged with state insurance departments and other governmental agencies that regulate the workers' compensation insurance business because of Archway and Agnew's unauthorized and fraudulent conduct. Finally, and most importantly, Archway and Agnew have created significant and hidden financial exposure for unsuspecting employers, who were duped into believing in good faith that they obtained appropriate coverage for their workers – without the knowledge of the insurer supposedly providing the coverage for them.

### 3. **The Balance Of Equities Tips In Arch's Favor.**

The balance of equities weighs decisively in Arch's favor. If a preliminary injunction is not granted as to them, Archway and Agnew will either continue their fraudulent scheme, creating additional risk and exposure for Arch and the employers and workers victimized by Archway and Agnew's misrepresentations, or commence destroying evidence of the fraud and statutory violations already committed so as to further hide their wrongful conduct. Moreover, third-parties that have been duped by the misleading/fraudulent certificates of insurance prepared by Archway will continue to be misled until the party that issued those documents – Archway, under Agnew's signature – says that the certificates do not mean what they mislead someone to believe.

- 7 -

LA 51414155

Archway and Agnew will not be subjected to hardship if the requested relief is granted. Ordering Archway and Agnew to cease issuing unauthorized documentary evidence of false insurance is necessary to stop a fraudulent practice; they cannot be prejudiced by being ordered to stop illegal conduct. Moreover, demanding that Archway and Agnew refrain from taking any steps to spoliate evidence is merely ordering them to comply with the law and imposes no hardship on them whatsoever. Compliance with the law is not an undue hardship. Finally, requiring Archway/Agnew to right the wrong they have done with third parties is not burdensome or oppressive, considering the havoc that they have wreaked.

### 4. The Public Interest Favors Granting Relief.

Employers are required by law to maintain workers' compensation policies to provide wage replacement and medical benefits to employees who are injured in the course of employment. Workers rely on their employers to obtain and maintain proper coverage, and they gain peace of mind through the employers' assurances that coverage is in place. Workers' compensation insurance is closely regulated by the states to ensure that workers and their families are protected from financial calamity in the event of an unfortunate accident or injury sustained on the job. Indeed, there is a public interest in ensuring that employers maintain workers' compensation insurance and that such insurance be in place so that workers' claims will be covered under collectible insurance issued by reputable insurers.

Archway and Agnew took advantage of Arch's good name and reputation in the insurance industry to fraudulently cause issuance of purported workers' compensation insurance, thereby creating significant and hidden financial exposure for the employers, who were tricked into believing in good faith that they had obtained appropriate coverage for their workers. Defendants have defrauded third-party employers who believe their workers are insured under Arch workers' compensation policies that Arch never authorized or issued. There is an urgent

- 8 -

LA 51414155

public interest at stake here that militates in favor of immediate injunctive relief being granted.

### III. CONCLUSION

For the foregoing reasons, Arch hereby renews its request that the Court extend the preliminary injunction to Archway and Agnew, such that they will be enjoined from issuing any binders, certificates or other purported documentary evidence of issuance of insurance by Arch, ordered to rescind, cancel and/or retrieve any binders, certificates of insurance or other purported documentary evidence of issuance of insurance by Arch, and enjoined from destroying, shredding, deleting, spoliating or in any way taking any steps that would lead to spoliation of any and all documents, including in whatever hard copy or electronic format in which they may exist, that relate in any way to the 2008 Binder Agreement, the 2009 Binder Agreement and the 2010 Binder Agreement (between Arch and Allegiant), and the Policies issued by Arch to Allegiant, including, but not limited to, binders, certificates or other purported documentary evidence of issuance of insurance by Arch, employee lists, loss runs and claims files.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JAMES E. FITZGERALD
JASON R. BENDEL
BRIAN FODERA

By      /s/ Brian Fodera

Brian Fodera
Attorneys for Plaintiff
Arch Insurance Company

- 9 -

LA 51414155