COPY

1   STROOCK & STROOCK & LAVAN LLP
    JAMES E. FITZGERALD (State Bar No. 108785)
2   JASON R. BENDEL (State Bar No. 212774)
    BRIAN FODERA (State Bar No. 246391)
3   2029 Century Park East, Suite 1600
    Los Angeles, CA  90067-3086
4   Telephone: 310-556-5800
    Facsimile: 310-556-5959
5   E-mail: *jfitzgerald@stroock.com;*
    *jbendel@stroock.com; bfodera@stroock.com;*
6   *lacalendar@stroock.com*

7   Attorneys for Plaintiff
    Arch Insurance Company

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12   ARCH INSURANCE COMPANY, a        ) Case No. CV 11-1675 CAS (PJWx)
     Missouri corporation,            )
13                                    ) FIRST AMENDED COMPLAINT
                    Plaintiff,        ) FOR:
14                                    )
           vs.                        ) (1) Violation of 15 U.S.C. § 1125
15                                    ) (Lanham Act)
                                      ) (2) Breach of Contract (Binder
16   ALLEGIANT PROFESSIONAL           ) Agreement)
     BUSINESS SERVICES, INC., a Nevada ) (3) Breach of Contract (Insurance
17   corporation; NATIONAL HR         ) Policy)
     COMPANIES, LLC, a Delaware Limited ) (4) Intentional Misrepresentation
18   Liability Company with its principal ) (5) Concealment
     place of business in Missouri;   ) (6) Negligent Misrepresentation
19   ARCHWAY INSURANCE SERVICES,      ) (7)Violation of California Business &
     LLC, a Pennsylvania Limited Liability ) Professions Code § 17200 et seq.
20   Company; BRIAN BONAR, an         ) (8) Violation of 18 U.S.C § 1962(c), (d)
     individual; COLIN NIVEN BONAR, an ) (RICO Act)
21                                    )
     individual; NORMAN TIPTON, an    )
22   individual; DAVID JATHO, an      ) DEMAND FOR JURY TRIAL
     individual; ROY HOMBS, an individual; )
23   and HUGH JAMES AGNEW, an         )
     individual,                      )
24                                    )
                    Defendants.       )
25                                    )
                                      )
26                                    )
                                      )
27                                    )
                                      )
28   _____)

LA 51424237

Plaintiff Arch Insurance Company ("Arch") alleges as follows:

## INTRODUCTION

Arch Insurance Company ("Arch") has been the victim of a massive fraud perpetrated by an Arch insured, Allegiant Professional Business Services, Inc. ("Allegiant"), Allegiant's insurance broker Archway Insurance Services, LLC ("Archway"), National HR Companies LLC ("National HR") and other co-conspirators in connection with Arch's workers' compensation insurance business. Arch has learned that the Defendants here have effectively been selling workers' compensation insurance to third-party companies and representing to them and their workers that they are covered under Arch insurance policies. Such representations are illegal since they have been done, without Arch's knowledge or authorization, by persons who are not licensed to transact such insurance business in any state. Unfortunately, Arch is not the only victim here. Defendants, in collecting millions of premium dollars for this fake insurance, keeping those premiums for their own coffers, and sending the subsequent workers' compensation claims to Arch for payment have duped hundreds of workers and their employers into believing they are covered by insurance – insurance that was never authorized or validly issued.

Workers' compensation insurance is designed to protect workers from injuries they sustain in the course of their employment. There is a public interest in ensuring that employers maintain workers' compensation insurance and that such insurance be in place so that workers' claims will be covered under collectible insurance issued by reputable insurers. Arch, as one of those insurers, has built a strong and respected national name in the insurance industry and, particularly, in the workers' compensation insurance market. Defendants have abused Arch's good name and standing in the insurance industry by fraudulently causing issuance of purported workers' compensation insurance, thereby creating significant and hidden financial exposure for numerous employers that were duped into believing in good faith that they had obtained valid coverage for their workers.

LA 51424237

1    This suit is brought to end Defendants' scam, protect the workers who have
2    been harmed by it and obtain indemnity for Arch's damages caused by the
3    Defendants' fraud.

4    **GENERAL ALLEGATIONS**

5    **A.    Jurisdiction and Venue**

6         1.    Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1331,
7    based upon the federal claims for violation of the Lanham Act, 15 U.S.C. § 1125,
8    and the RICO Act, 18 U.S.C. § 1962 (c), (d).

9         2.    The federal courts have pendent jurisdiction over the claims alleged
10   under California state law, pursuant to 28 U.S.C. § 1367(a) because the claims arise
11   from a common nucleus of operative facts such that Arch would be expected to try
12   all of the claims in one judicial proceeding.

13        3.    Pursuant to 28 U.S.C. § 1391(b), venue of this action is proper within
14   this District, as Defendant Allegiant Professional Business Services, Inc., is a
15   corporation subject to personal jurisdiction in this state by virtue of its contact with
16   this state, and by virtue of the fact that many of the alleged wrongful actions by
17   Defendants occurred in this District and harmed residents of this District.

18   **B.    The Parties**

19        4.    Plaintiff Arch Insurance Company ("Arch") is, and at all relevant times
20   herein was, a Missouri corporation incorporated under the laws of the State of
21   Missouri with its principal place of business in New York, New York.  Arch is, and
22   at all relevant times was, licensed to do business in California and doing business in
23   California.

24        5.    Defendant Allegiant Professional Business Services, Inc. ("Allegiant"),
25   is a publicly traded Nevada corporation with its principal place of business in
26   Anaheim, California, located in the County of Orange.   Arch is informed and
27   believes, and based thereon alleges, that Allegiant is, and at all relevant times was, a

28

- 3 -

corporation organized under the laws of the State of Nevada that regularly does business in California.

6.      Defendant National HR Companies LLC ("National HR"), is a Delaware company with its principal place of business in Columbia, Missouri, located in the County of Boone.  Arch is informed and believes, and based thereon alleges, that National HR regularly does business in California.

7.      Defendant Archway Insurance Services, LLC ("Archway"), is a Pennsylvania company with its principal place of business in Fort Washington, Pennsylvania, located in the County of Montgomery.  Arch is informed and believes, and based thereon alleges, that Archway regularly does business in California. Despite the similarity in their names, there is no relationship or affiliation between Arch and Archway.

8.      Upon information and belief, Defendant Brian Bonar ("Brian Bonar") is a Director and principal shareholder of Allegiant and was Allegiant's President and Chief Executive Officer during the time of many of the facts alleged herein.  Upon information and belief, Brian Bonar, at relevant times mentioned herein, with the assistance, participation, knowledge and cooperation of Colin Niven Bonar, controlled the operations of Allegiant.  Upon further information and belief, Brian Bonar is a resident of the State of California.

9.      Upon information and belief, Defendant Colin Niven Bonar ("Niven Bonar") is a Director, officer and principal shareholder of Allegiant and is also Allegiant's Chief Operating Officer.  Upon information and belief, Niven Bonar, at relevant times mentioned herein, ran the day-to-day operation of Allegiant, and with the assistance, participation, knowledge and cooperation of Brian Bonar, controlled the operations of Allegiant.  Upon further information and belief, Colin Niven Bonar is a resident of the State of California.

- 4 -

LA 51424237

10.     Upon information and belief, Defendant Norman Tipton is a Director of Allegiant and, during the relevant times mentioned herein, was Allegiant's general counsel, and a resident of the State of California.

11.     Upon information and belief, Defendants Brian Bonar, Niven Bonar and Norman Tipton were, at all times mentioned herein, acting as the agents, servants or employees of Defendant Allegiant Professional Business Services, Inc., and were at all times acting within the scope of such relationships.

12.     Upon information and belief, Defendant David Jatho is President, Chief Executive Officer and a principal shareholder of National HR, and a resident of the State of Missouri.

13.     Upon information and belief, Defendant Roy Hombs is Chief Financial Officer and a principal shareholder of National HR, and a resident of the State of Missouri.

14.     Upon information and belief, Defendant Hugh James Agnew is a principal owner of Archway and a resident of the State of Pennsylvania.

**C.   Background**

15.     Arch is an insurance company that provides various forms of insurance to businesses throughout the United States.  One of the lines of business written by Arch is workers' compensation policies.  Employers are required by state law to maintain workers' compensation policies to provide wage replacement and medical benefits to employees who are injured in the course of employment.  Workers rely on their employers to obtain and maintain proper coverage, and they gain peace of mind through the employers' assurances that coverage is in place.  Workers' compensation insurance is closely regulated by the states to ensure that workers and their families are protected from financial calamity in the event of an accident or injury sustained on the job.

///

///

- 5 -

LA 51424237

16.     Arch is informed and believes, and based thereon alleges, that at all relevant times, Allegiant operated two types of businesses: a temporary staffing unit and a Professional Employer Organization ("PEO").    The temporary staffing operation provides Allegiant employees to third-party or client companies under contract to meet seasonal demand, shortages created by employee vacations and other temporary labor demands.  The PEO operation of Allegiant is engaged in the business of assisting employers with hiring, payroll, benefits enrollment, administration and other tasks.  Under the PEO arrangement, employer clients of Allegiant transfer their payroll, benefits, workers' compensation and human resources responsibilities to Allegiant.    Arch agreed to provide workers' compensation insurance for Allegiant's employees—i.e., the temporary staffing side of Allegiant's business—not for Allegiant's PEO operations or employees of Allegiant's clients.

17.     Arch is informed and believes, and based thereon alleges, that at all relevant times, National HR was in the business of providing PEOs to employers and by doing so assisted employers with payroll processing, benefits administration and managing their workers' compensation insurance.

18.     Arch is informed and believes, and based thereon alleges, that at all relevant times, Archway was an independent insurance brokerage firm engaged in the business of procuring insurance for third parties through carriers with which it was aligned.  Archway has never been authorized to sell or issue insurance on behalf of Arch, or to act as Arch's agent for any purpose.

19.     In early 2008, pursuant to a Binder Agreement between Arch and Allegiant ("2008 Binder Agreement"), Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9116700 ("2008 Policy") to Mercer Ventures, Inc. ("Mercer"), the predecessor of Allegiant, providing coverage for Mercer's temporary staffing operations.  The 2008 Policy period was February 28, 2008 through February 28, 2009.  The 2008 Policy was intended to insure only

Mercer's temporary staffing employees, not its PEO operations or its clients' employees. On information and belief, Mercer/Allegiant's PEO clients' employees are covered under workers' compensation insurance provided by Union Labor Life Insurance Company ("Ullico") and/or Guarantee Insurance Company.

20. In early 2009, pursuant to a Binder Agreement between Arch and Allegiant ("2009 Binder Agreement"), Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9154700 ("2009 Policy") to Mercer, effective February 28, 2009 through February 28, 2010. Like the 2008 Policy, the 2009 Policy was intended to only insure Mercer's temporary staffing employees, and not its PEO clients' employees.

21. In or about March 2010, Arch and Allegiant entered into a written agreement ("Binder Agreement"), signed by Brian Bonar on behalf of Allegiant, under which Arch would provide workers' compensation insurance to Allegiant and its employees under the terms and conditions of the Binder Agreement. Arch and Allegiant agreed that only Allegiant's temporary staffing side of its business, and not the PEO side, would be covered under the workers' compensation coverage to be issued by Arch. Archway acted as Allegiant's agent in the negotiation of the Binder Agreement and the subsequent issuance of a workers' compensation policy to Allegiant.

22. The Binder Agreement provided that Allegiant could, and did, elect to have the workers' compensation insurance issued by Arch to then be reinsured with an affiliate of Arch, Alternative Re Limited. Such reinsurance was then collateralized pursuant to a shareholder agreement between Alternative Re Holdings Limited and Allegiant, under which Allegiant is required to deposit funds to secure payment of reinsured losses and expenses incurred under the policy. Determination of the amount of required funds was based, in part, on audits of Allegiant's books and records.

- 7 -

LA 51424237

23.    The Binder Agreement required Allegiant to advise Arch of any potential changes in the operations of Allegiant and to obtain written approval from Arch prior to the change of operations to avoid either policy cancellation or a change in program terms.

24.    The Binder Agreement also provided that the policy and premium are subject to audit, with final premiums to be adjusted based on the final audited exposure.

25.    In or about early March 2010, pursuant to and based on the Binder Agreement, Arch issued Workers Compensation and Employers Liability Insurance Policy number ZAWCI9199300 to Allegiant (the "Policy") for the policy period February 28, 2010 through February 28, 2011.

26.    In or about December 2010, Arch sent Allegiant a Premium Invoice for $637,505.95, the additional amount determined to be owed under the 2008 Policy after final audit.  Allegiant has refused, and continues to refuse, to pay that additional premium due.

27.    Upon information and belief, during late 2010 and early 2011, Hybrid Insurance Agency, LLC ("Hybrid") acted as an intermediate insurance broker assisting producing brokers and their corporate clients in connection with, among other things, obtaining workers' compensation insurance.  One of those clients is Family Care Visiting Nurse and Home Care Agency, LLC ("Family Care"), headquartered in Stratford, Connecticut.  Upon information and belief, Family Care employs around 200 employees that provide nursing and home care services in the state of Connecticut.  Upon information and belief, Hybrid was approached in 2010 by Dino Miliotis, an individual who represented that he was in charge of marketing and sales for Allegiant.  Upon information and belief, Miliotis represented to Hybrid that Allegiant could arrange for workers' compensation insurance for clients of Hybrid through Allegiant's PEO services.  Upon further information and belief, Miliotis also told Hybrid that Allegiant could provide "pay-as-you-go," stand-alone

- 8 -

1   workers' compensation insurance through its own master workers' compensation

2   insurance policy issued by Arch Insurance Company (i.e., the 2010 Policy).

3       28.    Upon information and belief, Hybrid presented Family Care as a

4   prospective insured to Allegiant for stand-alone workers' compensation insurance.

5   Upon information and belief, Family Care never intended to, or did use, any of

6   Allegiant's employees for the nursing services that it provided to its clients. Rather,

7   Family Care was only interested in obtaining workers' compensation with Arch

8   through Allegiant, to insure Family Care's employees. Upon information and belief,

9   to entice Hybrid and Family Care's producing broker to purchase workers'

10  compensation insurance under an Arch policy, Allegiant, through Niven Bonar and

11  Brian Bonar, agreed to pay (and did pay) for Hybrid's president and Family Care's

12  producing broker expenses to travel from Connecticut to San Diego for a meeting at

13  which Brian Bonar, Niven Bonar and Dino Miliotis presented how Hybrid could

14  obtain stand-alone workers' compensation coverage under an Arch policy for Family

15  Care. At the meeting, Hybrid was assured by the Bonars and Miliotis that Allegiant

16  could also provide stand-alone workers' compensation insurance through Arch to

17  other clients of Hybrid for a premium. Thereafter, and upon information and belief,

18  Allegiant advised Hybrid that the annual premium for a workers' compensation

19  policy for Family Care with Arch would be approximately $638,000 and that such

20  coverage would be subject to a $1 million limit per claim. Hybrid was provided a

21  binder agreement by Allegiant in November 2010 that purports to evidence workers'

22  compensation insurance for Family Care under the 2010 Policy, with an effective

23  date of December 1, 2010. The binder indicates that premium checks should be

24  made payable to "Allegiant Professional Business Services, Inc." and that all claims

25  should be reported to Allegiant's offices for the attention of Cecilia Dean. The

26  salutation at the end of the binder has Niven Bonar's name. The binder contains

27  Arch's service-marked name, without license or authorization from Arch, and, upon

28  information and belief, was intended to validate the fraudulent binder. Family Care

- 9 -

agreed to purchase the coverage offered under this "binder" and paid premiums to Allegiant prior to December 1, 2010, for such coverage. Upon information and belief, and in furtherance of the purported issuance of this fake insurance to Family Care, Allegiant sought the assistance of its agent, Archway. Allegiant requested and Archway provided an Acord Certificate of Insurance purporting to evidence Family Care being insured under Allegiant's Policy with Arch. That Certificate of Insurance bore the signature of Agnew and listed Archway as the "Producer." Upon further information and belief, that Certificate of Insurance was issued by Archway and provided to Allegiant and Family Care to evidence to them and their insurance broker that Family Care's employees were covered for workers' compensation claims under the Arch Policy. Arch has never authorized or issued any insurance that would cover Family Care, or any of its employees, under the Policy. The Acord Certificate provided to Family Care contains the service-marked name of Arch Insurance Company, but Arch did not authorize the use of its service-marked name in connection with these fraudulent certificates.

29.    On information and belief, Family Care employees have submitted workers' compensation claims to Cecilia Dean of Allegiant for processing. During this time, Hybrid, Family Care and Family Care's producing broker have dealt with Allegiant personnel, including Niven Bonar, Cecilia Dean and Alyssa Wilcox, regarding the premiums to be paid and the processing of Family Care's employees' workers' compensation claims.

30.    On information and belief, in January/early February 2011, Hybrid worked with R-T Specialty ("R-T"), an insurance brokerage firm based in Chicago, in connection with assisting several clients of R-T in obtaining workers' compensation insurance from Allegiant. Over the next several weeks, Hybrid made submissions for four companies (A&J Caulking, Alltown Bus Service, Inc. ("Alltown"), 76 Carriage House and Independent Courier) that were presented by

LA 51424237

R-T to obtain workers' compensation insurance policies to be issued by Arch through Allegiant. After submitting information requested from Allegiant for the "underwriting" of such requested insurance, Hybrid received back via electronic mail from Allegiant draft agreements for these companies to sign and later received insurance binders purporting to evidence workers' compensation insurance under the 2010 Policy. These binder forms were in the exact same format with the same type of information as was included on the binder provided for Family Care in November 2010. The binders contain Arch's service-marked name, without license or authorization from Arch, and, upon information and belief, were intended to validate the fraudulent binders.

31. In early February 2011, Arch first became aware that Alltown had been provided with a purported insurance binder on Allegiant letterhead that states that Alltown was provided workers' compensation insurance with limits of $1,000,000 under the Policy issued by Arch to Allegiant, effective January 21, 2011. The purported binder states that the annual premium for this workers' compensation coverage is $318,020.00 and is due and payable to Allegiant, and that claims under such coverage should be notified to Allegiant. Upon information and belief, Alltown and its broker were led to believe that Alltown was covered under the Policy for workers' compensation losses.

32. Arch has never authorized any person or entity, including but not limited to Allegiant, Archway or any other Defendant named herein, to issue an insurance binder to Alltown under the Policy, or any other workers' compensation policy written by Arch.

33. Upon information and belief, Defendant Norman Tipton signed letters on behalf of Allegiant in connection with the purported placement of insurance through R-T. In the letters, Tipton communicated to prospective third-party insureds that Allegiant, and its related entitites, was solvent and that it had appropriate reinsurance. Tipton also sent a letter to Arch in mid-February 2011 in which he

- 11 -

LA 51424237

indicated that he is Allegiant's general counsel and forwarded an affidavit by Alyssa Wilcox disavowing any knowledge of or involvement in the Alltown binders that bore her name.

34.     Upon information and belief, in early March 2011, Niven Bonar exchanged several e-mails with Hybrid regarding the Family Care account, specifically the issue of capping salaries and bonuses of Family Care employees for purposes of calculating Family Care's payroll, and the commensurate premiums to be charged by Allegiant.

35.     In or about early February 2011, Arch was contacted by American Business Insurance Services, Inc., of Westlake, California, an independent insurance broker servicing the transportation industry.   Upon information and belief, two of this broker's clients, Global Paratransit, Inc., of Gardena, California, and Southland Transit, Inc., of El Monte, California, had been provided with documentation purporting to evidence issuance of workers' compensation insurance under the Policy, with Archway listed as producer and Allegiant as the named insured.   Upon information and belief, Global Paratransit and Southland Transit paid approximately $2,900,000 in premiums for such purported insurance to National HR, and National HR and Allegiant have accepted said payments.   Upon further information and belief, Global Paratransit and Southland Transit, as well as their broker (American Business Insurance Services, Inc.), were told by Allegiant, National HR and Archway, and based thereon believed, that the premium they were paying for inclusion under the Policy was for workers' compensation insurance for their companies and their employees.   Upon further information and belief, Global Paratransit and Southland Transit submitted workers' compensation claims for their employees directly to National HR and/or Allegiant, which thereafter gave notice of such claims to California state regulators and Arch, and, in doing so, falsely represented that they were workers' compensation claims of Allegiant employees. Under the Binder Agreement and the Policy, workers' compensation claims are to be

administered by Arch's appointed representative, Gallagher Bassett Services, Inc. Upon information and belief, Arch, through Gallagher Bassett, paid such claims because they were represented to be claims arising out of injury to Allegiant's employees only – not employees of Global Paratransit and/or Southland Transit.

36.   Arch has never authorized any person or entity, including but not limited to Allegiant, National HR, Archway or any other Defendant, to issue an insurance binder or any other evidence of insurance to Global Paratransit or Southland Transit or any agent or broker of those entities under the Policy, or any other workers' compensation policy written by Arch, to cover non-Allegiant employees.

37.   Upon information and belief, Agnew, Archway's agent, with the consent and/or at the direction of Allegiant and/or National HR, executed Certificates of Insurance to Global Paratransit, Inc., and Southland Transit, Inc., to evidence to them and their insurance broker that Global Paratransit and Southland Transit were covered for workers' compensation claims of their employees.  Arch has never authorized or issued any insurance that would cover Global Paratransit or Southland Transit, or any of their employees under the Policy.

38.   Arch has never been paid any premium, or even been offered payment for any premium, charged by or paid to Allegiant, National HR or Archway for any workers' compensation insurance for Alltown, Global Paratransit, Southland Transit or Family Care.  Arch has never received any premium paid by Alltown, Global Paratransit, Southland Transit or Family Care to any of the Defendants or their agents, brokers or representatives.

39.   Upon information and belief, Defendants, or some of them, are responsible for issuance of documents that purport to evidence existence of workers' compensation insurance under the Policy for the benefit of third-party entities and their employees, including but not limited to Alltown, Global Paratransit,  Southland Transit and Family Care.  Arch has only recently become aware of this unauthorized

LA 51424237

and fraudulent activity and, upon information and belief, additional improper, unauthorized and fraudulent activity may have occurred. Arch reserves the right to amend this Complaint to allege additional facts regarding such activity as further information is learned.

40.    Pursuant to the terms and conditions of the Policy, as well as the 2008 Policy and 2009 Policy, Arch is entitled to perform an inspection and audit of Allegiant's files relating to the policy and the insurance thereunder. On or about January 19, 2011, Arch requested that Allegiant allow Arch to conduct an audit of Allegiant's files. Allegiant has unilaterally cancelled scheduled times to conduct such audit and will not permit Arch to perform such an audit of its files.

41.    Upon information and belief, Allegiant, National HR and Archway have represented to third-party companies, entities and individuals that these third parties have workers' compensation insurance coverage under the Policy. Upon further information and belief, Allegiant, National HR and/or Archway have accepted millions of dollars in premium for such purported coverage, and have submitted workers' compensation claims of non-Allegiant workers to Arch for payment under the guise that they are claims for Allegiant workers pursuant to the Policy coverage. Arch is informed and believes and thereon alleges that, in essence, Allegiant, National HR and Archway conspired with one another, and possibly others, to sell workers' compensation coverage under the Policy, collect millions of premium dollars for that coverage, and then submit workers' compensation claims for payment to Arch while falsely representing to Arch that the claims were those of their employees. Arch is further informed and believes that Allegiant, National HR and Archway represented to third parties that they were authorized to confirm such coverage with the use of insurance binders and certificates of insurance while concealing this fraudulent scheme from Arch. By engaging in such conduct, Defendants have jeopardized, and caused detriment to, the name and reputation of Arch in the insurance industry and general business community.

- 14 -

42.     Upon information and belief, Defendants, in being part of a rogue plan to sell insurance without the knowledge or authorization of the licensed insurer (Arch), and thereafter submitting claims falsely to states and to Arch for payment, engaged in numerous criminal and illegal activities under the laws of many states, including, but not limited to, California.

## FIRST CLAIM FOR RELIEF

### (Violation of 15 U.S.C. § 1125 / Lanham Act)

### (Against All Defendants)

43.     Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 42, inclusive, as if fully set forth hereat.

44.     As set forth more fully above, upon information and belief, Allegiant, National HR and Archway, in connection with the purported binding of insurance coverage, calculation of purported premium and presentation of false insurance claims, used in commerce the service-marked name of Arch Insurance Company and falsely represented to purported insureds that coverage had been bound with Arch, how Arch calculates premium for workers' compensation insurance and how it processes insureds' claims under such insurance.

45.     This improper and unapproved use of Arch's name is likely to deceive the general public as to the origin, sponsorship, or approval of goods, services, or commercial activities, specifically, the workers' compensation insurance coverage purported to be bound by Arch.

46.     The false representation that coverage was bound by Arch for Alltown Bus Service, Inc., Global Paratransit, Inc., Southland Transit, Inc., and Family Care is a violation of Section 43 of the Lanham Act, codified at 15 U.S.C. § 1125. Therefore, Allegiant, National HR and Archway are liable in a civil action if Arch is likely to be damaged by such act.

47.     The unauthorized binding of insurance coverage using Arch's name is likely to damage Arch because it will adversely affect Arch's reputation and

LA 51424237

compromise its ability to operate in the marketplace.  If innocent workers and employers who believe they are covered on the basis of Defendants' misrepresentations are unable to recover for their claims because no actual coverage has been bound, Arch is likely to be blamed for their losses.  Defendants' unauthorized and fraudulent conduct has also damaged Arch's reputation and good name with state insurance departments and other governmental agencies that regulate the workers' compensation insurance business.

48.    Under 15 U.S.C. § 1116(a), Arch is entitled to injunctive relief ordering that Defendants cease and desist from invoking Arch's name in the unauthorized issuance of purported binders of insurance.

49.    Under 15 U.S.C. § 1117(a), Arch is entitled to monetary relief in the amount of its own damages as well as Defendants' profits from the infringement of Arch's service mark.  Arch has suffered damages in an amount to be proven at trial, but no less than $1,000,000.

50.    Under 15 U.S.C. § 1117(a), Arch is also entitled to attorney's fees and costs it incurred due to Defendants' wrongful conduct set forth in this Complaint.

## SECOND CLAIM FOR RELIEF

### (For Breach of the Binder Agreements Against Allegiant)

51.    Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 50, inclusive, as if fully set forth hereat.

52.    The 2008 Binder Agreement, the 2009 Binder Agreement and the (2010) Binder Agreement (collectively, the "Binder Agreements")  were entered into by Arch based upon representations made by Allegiant (for purposes of this claim for relief, "Allegiant" also refers to its predecessor company, Mercer) and its agents in the application process.  Allegiant was required under the Policy to advise Arch of any potential changes in its operations and obtain written approval from Arch prior to any change in operations.

- 16 -

LA 51424237

53.    Upon information and belief, Allegiant breached the Binder Agreements in that it sought to extend workers' compensation coverage to third-party entities and workers that were not listed in the Policy, and to third-party entities and employees for which Allegiant supplied PEO operations.  By doing so, Allegiant acted in direct contravention of the Binder Agreements and attempted to substantially change and increase the risks being insured by Arch under the workers' compensation program. Allegiant also breached its obligations under the captive reinsurance program under the Binder Agreements.

54.    Arch performed all conditions, covenants and promises required on its part in accordance with the terms and conditions of the Binder Agreements.

55.    As a direct and proximate result of Allegiant's breach of the Binder Agreements as set forth above, Arch has been damaged in an amount to be proven at trial, but no less than $1,000,000.

### THIRD CLAIM FOR RELIEF

**(For Breach of the Insurance Policies Against Allegiant)**

56.    Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 50, and 52 through 55, inclusive, as if fully set forth hereat.

57.    The 2008 Policy, 2009 Policy and (2010) Policy (collectively, "the Policies") were issued by Arch based upon representations made by Allegiant (and/or Mercer) and its agents in the application process.  The Policies were maintained and kept in effect based upon Allegiant's continuing representations regarding the risks insured under the Policies, including, but not limited to, the type of business Allegiant was engaged in and the specific affiliated companies named in the Policies.

58.    Upon information and belief, Allegiant breached the Policies by, *inter alia*:

- failing to pay the required premiums for the 2008 Policy in full;

- 17 -

LA 51424237

- attempting to extend coverage to entities and workers that were not listed in the Policies, and to its PEO clients and their workers who were not employed by Allegiant;

- fraudulently issuing binders and/or certificates of insurance to parties not named in the Policies without Arch's authorization or consent;

- misrepresenting to Arch, Gallagher Bassett and state agencies that workers' compensation claims it submitted for payment under the Policies were for losses sustained by Allegiant employees, as opposed to employees of third party employers not insured under the Policies; and

- refusing to permit inspection and audit of its files, in violation of the terms and conditions of the Policies.

59.     Arch performed all conditions, covenants and promises required on its part in accordance with the terms and conditions of the Policies.

60.     As a direct and proximate result of Allegiant's breach of the Policies as set forth above, Arch has been damaged in an amount to be proven at trial, but no less than $1,000,000.

## FOURTH CLAIM FOR RELIEF

### (For Intentional Misrepresentation Against Allegiant, Archway, Brian Bonar, Colin Nevin Bonar, Norman Tipton and Hugh James Agnew)

61.     Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 50, 52 through 55, and 57 through 60, inclusive, as if fully set forth hereat.

62.     Upon information and belief, during the negotiation of the Binder Agreement and the underwriting of the Policy, and during the term of those agreements, Allegiant and Archway represented to Arch that Allegiant was only looking to insure its temporary staffing employees for workers' compensation, and that none of its PEO operations would be covered under the Policy.  Allegiant and

- 18 -

Archway did not tell Arch that they would be selling insurance to third parties, using Arch's policy as the vehicle to do so.   Upon further information and belief, Allegiant and Archway knew that Arch did not insure PEOs, that it only agreed to provide workers' compensation under the Policy to employees of Allegiant and those listed in the Policy and, under no circumstances, were they to provide coverage to employees under a PEO.  Upon information and belief, Allegiant, with the assistance of Archway, sought to extend Allegiant's workers' compensation coverage under the Policy to entities and workers that were not listed in the Policy, and to its PEO clients and their workers, who were not employed by Allegiant.  Arch was ignorant of the falsity of such representations and justifiably relied on Allegiant's misrepresentations when it entered into the Binder Agreement and subsequently issued the Policy, and while the Policy was in effect.

63.   Upon information and belief, Archway, in acting as Allegiant's broker and agent in the procurement of the Policy, and in connection with the continued maintenance and management of the Policy from 2008-2011, knew and participated with Allegiant in making the false representations described above with the intent to deceive and defraud Arch into continuing to keep the Policy in place and providing coverage under the Policy to third parties that were in fact not covered thereunder.

64.   As a proximate result of Allegiant's and Archway's misrepresentations, Arch has been exposed to potential workers' compensation claims for workers it did not agree to insure.   As a further proximate result of Allegiant's and Archway's misrepresentations, Arch has been damaged in an amount to be proven at trial, but no less than $1,000,000.

65.   Arch is informed and believes, and on that basis alleges, that Allegiant and Archway knew that their acts against Arch were in direct contravention of their representations made to Arch and in direct contravention of the Binder Agreement and the Policy.  Upon information and belief, Allegiant and Archway knew their acts were unauthorized when they performed them and were consciously done in a

- 19 -

1  secretive manner to avoid Arch's discovery of them.   As such, Allegiant and

2  Archway acted with malice, oppression and fraud and with a willful and conscious

3  disregard of Arch's rights, thus entitling Arch to recover, in addition to its actual

4  damages, punitive damages in an amount subject to proof at trial.

5                    **FIFTH CLAIM FOR RELIEF**

6              **(For Concealment Against All Defendants)**

7        66.   Arch incorporates by reference each and every allegation set forth in

8  paragraphs 1 through 50, 52 through 55, 57 through 60, and 62 through 65, inclusive,

9  as if fully set forth hereat.

10       67.   Upon information and belief, Allegiant concealed material information

11 from Arch that it had a duty to disclose in connection with its application for

12 workers' compensation insurance and its continued conduct during the term of the

13 Policy.   Specifically, Allegiant concealed from Arch that it attempted to extend

14 coverage to entities that were not listed in the Policy as affiliated companies.   Upon

15 further information and belief, Allegiant, National HR and Archway concealed that

16 they had issued purported binders and/or other documentation to entities that were

17 not covered under the Policy in an effort to evidence coverage under the Policy for

18 those entities and their employees.   Upon further information and belief, Allegiant,

19 National HR and Archway also concealed from Arch that they had accepted millions

20 of dollars in premiums for coverage under the Policy and submitted claims under the

21 Policy containing false information as to whom those claimants were actually

22 employed by, thereby representing to third parties that they were authorized to act on

23 behalf of Arch in the issuance of coverage, the remittance of premiums and the

24 presentation of their claims to Arch.   Arch is informed and believes and thereon

25 alleges that third parties have looked, and may look, to Arch to pay workers'

26 compensation claims under the Policy, for employees of entities that Arch never

27 agreed to insure.

28

LA 51424237

68.     Arch is informed and believes, and thereon alleges, that Allegiant, National HR and Archway knew that the acts described above they concealed from Arch were done without any authorization by Arch and were done secretly to avoid Arch from discovering such egregious conduct.    Arch is further informed and believes and thereon alleges that Allegiant, National HR and Archway intentionally concealed this material information with the intent to deceive Arch and profit financially at Arch's expense and to its detriment.

69.     Arch was unaware that Allegiant, National HR and Archway had been concealing material information and justifiably relied on their concealment of such information during the term of the Policy.

70.     As a proximate result of Allegiant, National HR and Archway's concealment of material information, Arch has been damaged in an amount to be proven at trial, but no less than $1,000,000.

71.     Arch is informed and believes, and on that basis alleges, that Allegiant, National HR and Archway acted with oppression, fraud and malice and with a willful and conscious disregard of Arch's rights in connection with the matters alleged in this claim for relief.    Arch is further informed and believes that the conduct of Allegiant, National HR and Archway in holding out to the public and workers that they were covered under insurance that was never issued by the insurer and collecting millions of dollars in premiums in the process was despicable.    Based on Allegiant, National HR and Archway's conduct alleged herein, Arch is entitled to recover, in addition to its actual damages, punitive damages in an amount subject to proof at trial.

## SIXTH CLAIM FOR RELIEF

**(For Negligent Misrepresentation Against Allegiant, Archway,**

**Brian Bonar, Colin Nevin Bonar,**

**Norman Tipton and Hugh James Agnew)**

- 21 -

LA 51424237

72.   Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 50, 52 through 55, 57 through 60 and 62 through 65, inclusive, as if fully set forth hereat.

73.   Upon information and belief, during the negotiation of the Binder Agreement and the underwriting of the Policy, and during the term of those agreements, Allegiant and Archway represented to Arch that Allegiant sought to insure its temporary staffing employees for workers' compensation, and that none of its PEO operations would be covered under the Policy.  Allegiant and Archway did not tell Arch that they would be selling insurance to third parties, using Arch's policy as the vehicle to do so. Upon information and belief, Allegiant and Archway knew that Arch did not insure PEOs and that it only agreed to provide workers' compensation under the Policy to employees of Allegiant and those listed in the Policy, and under no circumstances to employees under a PEO.  Upon information and belief, Allegiant, with the assistance of Archway, sought to extend its workers' compensation coverage under the Policy to entities and workers that were not listed in the Policy, and to Allegiant's PEO clients and their workers, which were not employed by Allegiant.  Arch was ignorant of the falsity of such representations and justifiably relied on Allegiant's and Archway's misrepresentations when it entered into the Binder Agreement and subsequently issued the Policy, and while the Policy was in effect.

74.   Arch is informed and believes and thereon alleges that when Allegiant and Archway made such material representations they knew, or should have known, that they were not true, and/or had no reasonable grounds for believing them not to be true, and did so with the intent to induce Arch's reliance thereon.

75.   Arch was ignorant of the falsity of Allegiant and Archway's representations and justifiably relied on such misrepresentations when it issued the Policy, and while the Policy was in effect.

LA 51424237

76.    As a proximate result of Allegiant and Archway's misrepresentations, Arch has been exposed to potential workers' compensation claims for workers it did not agree to insure.    As a further proximate result of Allegiant and Archway's misrepresentations, Arch has been damaged in an amount to be proven at trial, but no less than $1,000,000.

## SEVENTH CLAIM FOR RELIEF

### (For Violation of California Business & Professions Code Section 17200 Against All Defendants)

77.    Arch incorporates by reference each and every allegation set forth in paragraphs 1 through 50, 52 through 55, 57 through 60, 62 through 65, 67 through 71 and 73 through 76, inclusive, as if fully set forth hereat.

78.    California Business and Professions Code Section 17200 prohibits businesses from engaging in unlawful, unfair or fraudulent business practices, especially those visited upon the unsuspecting public.

79.    Upon information and belief, Defendants have engaged in unlawful, unfair and/or fraudulent business practices pursuant to California Business and Professions Code Section 17200 *et seq.*   Such unlawful, unfair and/or fraudulent business practices include, but are not limited to: Defendants holding themselves out as authorized representatives of Arch for the purpose of issuing insurance binders, certificates or other documents evidencing insurance under Arch's name; collecting millions of dollars as premiums for coverage that does not exist; falsely assuring companies and their workers that they are insured with an A+ rated insurer;  holding themselves out as licensed to act as an insurer and/or insurance broker/agent to the public; and making false reports to state agencies.

80.    Defendants' unlawful, unfair and fraudulent business practices have damaged the unsuspecting businesses and their workers that believed they were obtaining workers' compensation insurance from a reputable insurer, and have

- 23 -

1   damaged Arch, which is left to pick up the pieces from the havoc raised by

2   Defendants' outrageous and greedy conduct.

3       81.   Based on the unlawful, unfair and fraudulent conduct of Defendants as

4   described herein, Arch is entitled to injunctive relief, restitution and its attorneys fees

5   and costs pursuant to California Business and Professions Code Section 17200 *et seq.*

6                          **EIGHTH CLAIM FOR RELIEF**

7              **(Violation of 18 U.S.C § 1961 et seq. / RICO)**

8                          **(Against All Defendants)**

9       82.   Arch incorporates by reference each and every allegation set forth in

10  paragraphs 1 through 50, 52 through 55, 57 through 60, 62 through 65, 67 through 71

11  and 73 through 76, inclusive, as if fully set forth hereat.

12      83.   Defendants, and each of them, are an enterprise within the meaning of

13  18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate

14  commerce.

15      84.   Defendants, by issuing unauthorized insurance binders and other

16  documentation purporting to evidence insurance under the Policy, intentionally

17  trafficked in goods or services while knowingly using a counterfeit mark on or in

18  connection with such goods or services.

19      85.   The issuance of fraudulent documents purporting to evidence insurance

20  for entities and their employees under the Policy, while collecting premium dollars

21  for such purported insurance, and the subsequent fraudulent submission of workers'

22  compensation claims, represented a scheme and artifice to defraud Arch and the

23  purported insureds in violation of 18 U.S.C § 2320, which prohibits trafficking in

24  counterfeit goods or services.

25      86.   Trafficking in counterfeit goods or services constitutes racketeering

26  activity as that term is defined in 18 U.S.C. § 1961(1)(B).

27

28

LA 51424237

87.     The fraudulent misrepresentations set forth above were facilitated by use of the United States Mail, caused by Defendants, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

88.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

89.     The fraudulent misrepresentations set forth above were also facilitated by use of electronic mail, caused by Defendants, and resulting in wire fraud within the meaning of 18 U.S.C § 1343.

90.     Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

91.     Defendants' multiple fraudulent misrepresentations as detailed above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

92.     Defendants and Defendants' agents, associates and representatives have conducted, and have conspired to conduct, the affairs of Allegiant, National HR and Archway through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

93.     As a direct and proximate result of these violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), Arch has suffered actual damages as a result of injury to its business and property in an amount to be proven at trial but at least $1,000,000.

94.     Defendants are liable to Arch for treble damages, together with all costs of this action plus reasonable attorney's fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

- 25 -

LA 51424237

On the First Claim for Relief

1.    That injunctive relief be entered prohibiting Defendants from issuing unauthorized insurance binders invoking Arch's name.

2.    For monetary relief in the amount of its own damages as well as Defendants' profits from the infringement of Arch's service mark.

3.    For attorney's fees and costs; and

4.    For such other and further relief as the court deems just and equitable.

On the Second Claim for Relief

1.    For damages to be proven at the time of trial in an amount no less than $1,000,000;

2.    For attorneys' fees and costs of suit herein; and

3.    For such other and further relief as the Court deems just and proper.

On the Third Claim for Relief

1.    For damages to be proven at the time of trial in an amount no less than $1,000,000;

2.    For attorneys' fees and costs of suit herein; and

3.    For such other and further relief as the Court deems just and proper.

On the Fourth Claim for Relief

1.    For damages to be proven at the time of trial in an amount no less than $1,000,000;

2.    For an award of punitive damages;

3.    For attorneys' fees and costs of suit herein; and

4.    For such other and further relief as the Court deems just and proper.

On the Fifth Claim for Relief

1.    For damages to be proven at the time of trial in an amount no less than $1,000,000;

2.    For an award of punitive damages;

3.    For attorneys' fees and costs of suit herein; and

LA 51424237

1    4.    For such other and further relief as the Court deems just and proper.

2    On the Sixth Claim for Relief

3    1.    For damages to be proven at the time of trial in an amount no less than

4    $1,000,000;

5    2.    For an award of punitive damages;

6    3.    For attorneys' fees and costs of suit herein; and

7    4.    For such other and further relief as the Court deems just and proper.

8    On the Seventh Claim for Relief

9    1.    That injunctive relief be entered prohibiting Defendants from issuing

10   unauthorized insurance documentation invoking Arch's name.

11   2.    For monetary relief in the form of restitution of moneys improperly

12   obtained by Defendants.

13   3.    For such other and further relief as the court deems just and equitable.

14   On the Eighth Claim for Relief:

15   1.    For damages to be proven at the time of trial in an amount no less than

16   $1,000,000;

17   2.    For an award of treble damages;

18   3.    For attorneys' fees and costs of suit herein; and

19   4.    For such other and further relief as the Court deems just and proper.

20

21                              STROOCK & STROOCK & LAVAN LLP
                                JAMES E. FITZGERALD
22                              JASON R. BENDEL
                                BRIAN FODERA
23

24                       By _____

25                                   Brian Fodera
                                Attorneys for Plaintiff
26                              Arch Insurance Company

27

28

                                   - 27 -

LA 51424237

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(b)(1) of the Federal Rules of Civil Procedure.

STROOCK & STROOCK & LAVAN LLP
JAMES E. FITZGERALD
JASON R. BENDEL
BRIAN FODERA

By _____

Attorneys for Plaintiff
Arch Insurance Company

- 28 -

LA 51424237

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                           )   ss
COUNTY OF LOS ANGELES      )

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action. My business address is: 2029 Century Park East, Los Angeles, CA 90067-3086.

On June 13, 2011, I served the foregoing document(s) described as: **FIRST AMENDED COMPLAINT FOR: (1) Violation of 15 U.S.C. § 1125 (Lanham Act) (2) Breach of Contract (Binder Agreement) (3) Breach of Contract (Insurance Policy) (4) Intentional Misrepresentation (5) Concealment (6) Negligent Misrepresentation (7) Violation of California Business & Professions Code § 17200 et seq. (8) Violation of 18 U.S.C. § 1962(c), (d) (RICO Act)** on the interested parties in this action as follows:

**[See attached service list]**

☐ **(VIA PERSONAL SERVICE** By causing the document(s), in a sealed envelope, to be delivered to the person(s) at the address(es) set forth above.

☑ **(VIA U.S. MAIL)** In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth above.

☐ **(VIA E-MAIL)** Based on a court order or an agreement of the parties to accept service by e-mail, I caused the documents to be sent to the persons at the e-mail addresses listed in the attached Service List.

☐ **(VIA ELECTRONIC CASE FILING)** I filed electronically the documents listed above, using the [court name]'s electronic case filing service, on [date]. Counsel of record are registered to file electronically with this Court, and receive copies of the documents via e-mail from the Court to confirm filing.

☐ **(VIA FACSIMILE)** By causing such document to be delivered to the office of the addressee via facsimile.

☐ **(VIA OVERNIGHT DELIVERY)** By causing the document(s), in a sealed envelope, to be delivered to the office of the addressee(s) at the address(es) set forth above by overnight delivery via Federal Express, or by a similar overnight delivery service.

I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 13, 2011, at Los Angeles, California.

Patricia A. Bloom
[Type or Print Name]                    [Signature]

LA 51383086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

## SERVICE LIST

*Arch Insurance Company v. Allegiant Professional Business Services, Inc., et al.*
*Case No. CV 11-1675 CAS(PJWx)*

Robert F. Hinton, Esq.
Archer Norris, PLC
337 South Grand Avenue, Suite 1700
Los Angeles, CA 90071
Tel:  (213) 437-4000
Fax:  (213) 437-4011
*Attorneys for Defendants Allegiant Professional Business Services, Colin Niven Bonar, Brian Bonar, John Cappezzuto, David Goldberg and Norman Tipton*

Andrew L. Jones, Esq.
Law Offices of Andrew L. Jones, P.C.
5400 LBJ Freeway, Suite 1200
Dallas, TX 75240
Tel:  (214) 979-0100
Fax:  (214) 979-0101
ajones@andrewjoneslaw.com
*Attorneys for Defendants National HR Companies, LLC, David Jatho and Roy Hombs*

Eric Medel, Esq.
Pistone & Wolder, LLP
2020 Main Street, Suite 900
Irvine, CA 92614
Tel:  (949) 622-8980
Fax:  (949) 622-8985
emedel@pistonewolder.com
*Attorneys for Defendants National HR Companies, LLC, David Jatho and Roy Hombs*

Michael McCarthy, Esq.
Tommy Q. Gallardo, Esq.
Nemecek & Cole
15260 Ventura Blvd., Ste. 920
Sherman Oaks, CA 91403-5344
Tel:  (818) 788-9500
Fax:  (818) 501-0328
tgallardo@nemecek-cole.com
*Attorneys for Archway Insurance Services, LLC and Hugh James Agnew*

John A. Mayers, Esq.
Mulvaney, Kahan & Barry, LLP
401 West A Street, 17th Fl.
San Diego, CA 92101
Tel:  (619) 238-1010
Fax:  (619) 238-1981
jmayers@mkblaw.com
*Attorneys for Defendant Norman Tipton*

LA 51383086