UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| James Fitzgerald<br>Brian Fodera | Michael McCarthy<br>Tommy Gallardo<br>Andrew Jones |

**Proceedings:**     DEFENDANTS HUGH JAMES AGNEW AND ARCHWAY INSURANCE SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT AS TO THIRD AMENDED COMPLAINT (Docket No. 280, filed September 14, 2012)

## I.     INTRODUCTION

Plaintiff filed this case on February 25, 2011.  Plaintiff filed a first amended complaint on June 3, 2011, a second amended complaint on January 9, 2012, and a third amended complaint on May 23, 2012.  Plaintiff's third amended complaint alleges eight claims for relief: (1) violation of the 15 U.S.C. § 1125, (2) breach of contract (binder agreement) (3) breach of contract (insurance policy), (4) intentional misrepresentation, (5) concealment, (6) negligent misrepresentation, (7) violation of California's Unfair Competition Law (California Business & Professions Code § 17200 et. seq.) ("UCL"), and (8) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et. seq. ("RICO").  A jury trial is set to begin on November 27, 2012.  Dkt. # 225.

On September 14, 2012, defendants Archway Insurance Services LLC ("Archway") and Hugh James Agnew ("Agnew") moved for summary judgment. Plaintiff filed an opposition on September 24, 2012, and defendants replied on October 1, 2012.  Defendants' motion is presently before the Court.[1]

---

[1] The parties also submitted numerous objections to evidence submitted by the parties.  The Court does not rely on the evidence to which objections are asserted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                      ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

## II.   BACKGROUND

### A.   UNDISPUTED BACKGROUND FACTS

The following facts are undisputed.  Archway is an insurance producer, and Agnew is Archway's managing member and holds the license through which Archway does business in California.  Archway's Statement of Uncontroverted Facts ("Archway SUF") ¶¶ 1 –2; Arch's Statement of Genuine Disputes ("Arch SGD") ¶¶ 1 – 2.  Archway and Mercer Ventures, Inc. ("Mercer"), which later changed its name to Allegiant Business Services, Inc. ("Allegiant"), entered into  broker agreements in February 2008, February 2009, and February 2010.  Archway SUF ¶¶ 3, 5, 7; Arch SGD ¶ 3, 5, 7; Arch SGD  ¶ 84; Archway's Reply Separate Statement of Uncontroverted Facts ("Archway SSUF") ¶ 84.  Additionally, in February 2008, February 2009, and February 2010, Arch entered into one year agreements with Mercer, and later Allegiant, to provide workers compensation and employee liability insurance (the "2008 Arch policy," "2009 Arch policy," and "2010 Arch policy").  Archway SUF ¶¶ 4, 6, 8; Arch SGD ¶¶ 4, 6, 8.

### B.   THE ALLEGED SCHEME INVOLVING THE ARCH INSURANCE POLICIES

According to plaintiff, the workers compensation insurance it issued under the 2008 – 2010 policies was the result of a scheme to defraud it into paying insurance claims it never intended to cover.  Plaintiff believed that each of the 2008 – 2010 policies only covered Allegiant employees who would be sent to work for Allegiant's clients on a temporary basis.  Arch SGD ¶¶ 81 – 82, 86 – 87, 90 – 91.  Additionally, plaintiff believed that the 2008 – 2010 policies were not intended to cover Allegiant's "PEO clients."[2]  Id.

---

Accordingly, these objections are hereby overruled as moot.

[2] "PEO" is an acronym for "Professional Employer Organization."  According to the National Association of Professional Employer Organizations, "[a] PEO provides integrated services to effectively manage critical human resource responsibilities and employer risks for clients. A PEO delivers these services by establishing and maintaining an employer relationship with the employees at the client's worksite and by contractually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

Plaintiff claims, however, that Allegiant was not a temporary staff agency, but instead was a PEO and Staffing Company.  Arch SGD ¶ 101.  Rather than providing temporary employees to its clients, plaintiff claims that Allegiant was using the 2008 – 2010 policies to provide workers' compensation coverage to employees of other companies without plaintiff's knowledge or permission.  Plaintiff further avers that Allegiant accepted insurance premiums and other fees for this insurance coverage without plaintiff's knowledge or consent.  See Arch SGD ¶¶ 100 – 108.

According to plaintiff, Archway represented that Allegiant and Mercer were temporary staffing agencies, and made specific representations that Allegiant provided temporary staff employees to Southland Transit, Inc.[3]  Arch SGD ¶¶ 78, 82, 84, 114.  Plaintiff also claims that Archway knew that Allegiant wanted to provide coverage to its PEO clients under the Arch policies, but represented to Arch that it had another insurance carrier which was providing workers' compensation insurance to any PEO clients Allegiant might obtain.  Arch SGD ¶ 92, 120.

Defendants do not appear to contest whether Allegiant or Mercer actually committed the misconduct involving the 2008 – 2010 Arch policies, but they do assert that at the time Arch issued the 2008 – 2010 policies, they believed that Mercer and Allegiant were only looking to insure their temporary staff employees, and that PEO clients would not be covered under the 2008 – 2010 Arch policies.  Archway SUF ¶¶ 35 – 36.

---

assuming certain employer rights, responsibilities, and risk."  National Association of Professional Employer Organizations website, "What is a PEO;" available at http://www.napeo.org/peoindustry/index.cfm.  It appears to be indisputed that "[u]nder a PEO workers' compensation policy, the co-employees of the PEO and the client company are covered for injuries sustained on the job."  Arch SGD ¶ 133; Archway SSUF ¶ 133 (not objecting on a factual basis to this proposition).

[3] Plaintiff claims that Allegiant actually provided stand alone workers compensation insurance to Southland Transit, Inc.  Arch SGD ¶ 112.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

### C.   CERTIFICATES ISSUED BY ARCHWAY

Under the 2008 – 2010 policies, Archway issued insurance certificates to provide Allegiant's clients evidence of workers compensation insurance under the policies.  Arch SGD ¶ 93; Archway SSUF ¶ 93.  These certificates included the name of the insurance producer (Archway), the name of the insured, the insurer providing coverage (Arch), the coverage provided (workers compensation), and the certificate holder.  Arch SGD ¶ 94; Archway SSUF ¶ 94.  These certificates were not provided to Arch prior to being issued, and Arch did not specifically approve the issuance of any certificate.  Arch SGD ¶ 98; Archway SSUF ¶ 98.

In Spring 2009, an Archway representative asked Thomas Maytrott ("Maytrott"), the Arch underwriter for the allegiant account, whether it could use the phrase "L/C/F" on certificates of insurance issued by Archway.[4]  Arch SGD ¶ 127, Archway SSUF ¶ 127. Maytrott, who was not involved with PEO accounts, responded that he was unfamiliar with the language, and after speaking with his underwriting colleagues at Arch, Maytrott learned that Arch had no experience using the language.  Arch SGD ¶¶ 128 – 130; Archway SSUF ¶¶ 128 – 130.  Accordingly, Maytrott sent Archway a letter in April 2009 stating that he did not see any issue with using the "L/C/F" language, and also stated that "coverage is subject to the terms and conditions of the issued policy for the named insured and their employees."  Arch SGD ¶ 131, Archway SSUF ¶ 131.[5]

---

[4] "L/C/F" is an acronym for "Labor Contractor For."  Arch SGD ¶ 127; Archway SSUF ¶ 127.

[5] Though the parties agree that Archway consulted with Maytrott regarding the "L/C/F" language, the parties dispute the scope of permission that Maytrott extended to Archway.  According to defendants, Maytrott placed no limit on Archway's use of the phrase "L/C/F" on insurance certificates; plaintiff, however, states that Maytrott never extended Archway permission to use the phrase in the "insured" box of an insurance certificate to indicate a different insured than Allegiant.  <u>See</u> Archway SUF ¶ 12; Arch SGD ¶ 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

According to plaintiff, defendants issued insurance certificates that included the names of Allegiant's clients in the "insured" section of these certificates. Arch SGD ¶ 110, 116 – 118, 126, 138 – 139. In many cases, the name of the non-Allegiant entity was preceded by the phrase "L/C/F." See, e.g., Fodera Decl. Ex. N; Arch SGD ¶¶ 110, 126, 137 – 139. Plaintiff states that the purpose of these certificates was to facilitate the allegedly improper PEO or Staffing Company relationships that Allegiant entered into with certain clients. Arch SGD ¶ 109.

According to defendants, they did not believe that the certificates issued conferred rights on the certificate holders or in any way altered the scope of coverage under the 2008 – 2010 Arch policies. Archway SUF ¶ 21, 49.

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|----------|--------------------------|------|-------------------|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted); <u>Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.


**IV.    ANALYSIS**


**A.    PLAINTIFF'S STATE LAW FRAUD CLAIMS**


Plaintiff has alleged claims for intentional misrepresentation, concealment, and negligent misrepresentation.  The basis of these claims is that defendants misrepresented or concealed to plaintiff the nature of Allegiant's business: defendants represented that Allegiant provided temporary staffing services, but Allegiant actually provided PEO services or stand alone workers compensation insurance.  For each of these claims, plaintiff argues that defendants knew, or should have known, that Allegiant was using the 2008 – 2010 Arch policies for purposes beyond the scope of the intended agreement because it issued certificates for Allegiant that contained the "L/C/F" language and listed an entity other than Allegiant in the "insured" section of the forms.  According to plaintiff, this is evidence that defendants either knew, or should have known, about the improper use Allegiant was making of the Arch policies, because the phrase "L/C/F" is widely used in issuing insurance certificates in connection with PEO relationships.  Rothman Decl. ¶ 4.[6]  Additionally, plaintiff argues that because these insurance certificates state "the policies of insurance listed below have been issued to the insured named above for the policy period indicated," they suggest on their face that any entity named in the "insured" section is covered under the Arch policies, and therefore provide

---

[6] Defendants' object to Rothman's declaration on several grounds.  Dkt. # 293.  Because the Court does not rely on Rothman's expert opinion in reaching its decision, defendants' objections are overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | | Date | October 15, 2012 |
|---|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | | |

evidence that defendants knew that Allegiant was making improper use of the Arch policies. See Fodera Decl. Exs. M, N.[7]

Defendants make several arguments in response. First, defendants argue that the "L/C/F" language is used in multiple staffing arrangements, not just PEO arrangements, and therefore the inclusion of the language on the certificates does not show that defendants knew or should have known about Allegiant's allegedly improper use of the Arch policies. Masters' Decl ¶¶ 10 – 11. Second, defendants argue that no misrepresentation or concealment took place because Archway asked Maytrott for permission to use the "L/C/F" language to complete insurance certificates, and defendant even offered to send Maytrott completed certificates. See Yach Deposition, Def. Compendium of Evidence Ex. 46 at 282. Third, defendants submit declarations from Archway employees stating that they did not know that Allegiant was using the Arch policy for its PEO clients, and that they did not know that the certificates contained language only appropriate for a PEO relationship. See, e.g., Yach Decl. ¶ 23.

The Court finds that there is a genuine issue of material fact regarding the state law fraud claims. Although defendant argues that the language on the certificates does not denote a PEO relationship, plaintiff has put forward evidence contradicting this assertion. Therefore, a reasonable juror viewing this evidence could conclude based on the certificates issued that defendant knew that Allegiant was using the Arch policies to provide PEO or related services. Additionally, even though Maytrott stated that he did

---

[7] Defendants summarily object to these two exhibits – which contain examples of certificates of insurance allegedly issued by Archway – on the grounds of improper authentication, lack of foundation and personal knowledge, hearsay, improper lay opinion, improper expert opinion, argumentative and conclusory, and speculation. These objections are overruled without prejudice. In any event, because defendants do not appear to contest whether they completed insurance certificates containing the "L/C/F" language and listing entities other than Allegiant listed in the insured section, the fact that these certificates were issued is not in dispute, and the evidentiary objection is without merit. See, e.g., Defendants' Reply Brief at 24 ("In January and February of 2011, Archway sent more than a hundred certificates [to Arch], including ones with the "LCF" acronym.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

not object to the use of the "L/C/F" language, he was not informed that the language would be used to place multiple entities in the "insured" section of a certificate, and hence any approval does not demonstrate that defendants did not conceal the true nature of Allegiant's business from plaintiff.  Finally, even though defendants offered to disclose certificates to plaintiff, this does not show that concealment did not take place because there is evidence that when defendants actually disclosed certificates to plaintiff, the certificates did not contain the "L/C/F" language or list an entity other than Arch as insured.  See Maytrott Decl. ¶ 13.  In any event, though defendant offered to provide Maytrott with completed certificates using the "L/C/F" language, defendants did not actually disclose any of the problematic insurance certificates to plaintiff in time to alert plaintiff to Allegiant's improper use of the Arch policies.  Accordingly, a grant of summary judgment on plaintiff's concealment claim would not be proper.

### B.   PLAINTIFF'S LANHAM ACT CLAIM

Plaintiff argues that defendants violated the Lanham Act by using plaintiff's name in a way that suggested plaintiff endorsed insurance coverage that it did not in fact endorse.  11 U.S.C. § 1125.  Specifically, plaintiff argues that insurance certificates completed by Archway created the false impression that Arch provided insurance to the entities named in those certificates.[8]  These insurance certificates state "the policies of insurance listed below have been issued to the insured named above for the policy period indicated," and several certificates completed by defendants list entities other than Allegiant in the "insured" box.  See Fodera Decl. Ex. N.  To show that companies took these certificates to mean that they were beneficiaries of an Arch insurance policy, plaintiff points out that Southland Transit, Inc., one of the entities named on these insurance certificates, understood these certificates to mean that their employees were covered under Arch's insurance policy.  Fodera Decl. ¶ 10, Exh. I at 35:7 – 38:21.

Defendants make two arguments in response.  First, defendants argue that plaintiff

---

[8] Although defendants argue that plaintiff's complaint only pleaded a violation of the Lanham Act based on binding insurance, plaintiff's claim contains allegations regarding the certificates that it now asserts are the basis of its Lanham Act claim.  See Third Amended Complaint ¶ ¶ 60, 68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

consented to the use of the phrases "LCF" or "SCF" on the insurance certificates, and that this acquiescence defeats plaintiff's Lanham Act claim.  Second, defendants argue that the use of Arch's name on the certificates does not suggest that Arch approved of insurance coverage benefitting the entities named as "insured" on those certificates, and that any use of Arch's name is therefore nominative fair use.  See New Kids on the Block v. News America Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992).  In support of this argument, defendants point to disclaimers on the insurance certificates stating that the certificates do not confer any rights beyond the rights conferred by the underlying policy, and that they are issued as a matter of information only.[9]  Additionally, defendants argue that the when an entity's name appeared in the "insured" box of a certificate preceded by the phrase "LCF," that entity is not a policyholder, and the phrase "LCF" only denotes that there is some staffing relationship between the entities named in the "insured" box. Masters Decl. ¶¶ 10 – 11.

The Court finds that there is a genuine issue of material fact underlying plaintiff's Lanham Act claim.  As discussed above, both parties submit evidence regarding the meaning of the insurance certificates, so there is a genuine dispute over whether these certificates suggest that plaintiff approved of the coverage evidenced by the certificates. Moreover, since a reasonable juror could find that the certificates suggest that Arch endorsed the coverage described in the certificates, defendants' nominative fair use defense fails.  New Kids on the Block, 971 F.2d at 308 (nominative fair use defense requires that "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.")  Finally, as explained in the section above, a reasonable juror could infer that plaintiff did not acquiesce to the use of the "L/C/F" language to place multiple entities in the insured section of the certificates, so defendants' consent defense also fails.

---

[9] The certificates state "This certificates is issued as a matter of information only and confers no rights upon the certificate holder.  This certificate does not amend, extend or alter the coverage afforded by the policies below."  Fodera Decl. Ex. N.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

### C.    PLAINTIFF'S CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

Plaintiff claims that it has a cognizable claim against defendants for restitutionary disgorgement under California's UCL.  Specifically, plaintiff argues that it paid Archway $450,000 a year for services on the Allegiant account, and that it should recover the money paid due to defendants' misconduct.  Additionally, plaintiff argues that injunctive relief is appropriate because Archway could issue additional fraudulent certificates in the future, even though the underlying Arch policy is no longer in effect.

In response, defendants argue that the claim for injunctive relief fails because there is no evidence that the alleged misconduct will occur in the future, which is a requirement for receiving injunctive relief under California's unfair competition law.  Defendants also argue that plaintiff cannot recover the $450,000 as restitution because the money was not taken from plaintiff.  Finally, Agnew argues that he was not paid any money directly by plaintiff, and therefore the restitution claim against him fails.

Here, the form of restitution requested by plaintiff is permissible under the UCL. The UCL allows a victim of an unfair practice to recover restitution, <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1152 (Cal. 2003), so plaintiff may seek to recover money it paid to Archway in connection with its account with Allegiant.  Since plaintiff did not pay Agnew individually any money, however, the UCL claim for damages against Agnew should be dismissed.

Additionally, the claim for injunctive relief should not be dismissed because there is a genuine issue of material fact regarding whether defendants' alleged misconduct is likely to be repeated in the future.  As discussed below, there is a genuine issue of material fact regarding whether issuing fraudulent certificates was a regular way of conducting business at Archway.  Accordingly, it would not be proper to grant defendants summary judgment on plaintiff's claims for injunctive relief under the UCL.

Therefore, summary judgment on plaintiff's claim for damages against defendant Agnew under the UCL should be granted.  Otherwise, summary judgment should be denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

### D.   PLAINTIFF'S RICO CLAIM

Plaintiff argues that defendants violated RICO in two ways.  First, plaintiff argues that defendants engaged in a pattern of racketeering in violation of 18 U.S.C. § 1962(c). Specifically, plaintiff argues that defendants commit several acts of wire fraud by issuing false certificates through e-mail.  Second, plaintiff argues that defendants conspired with Allegiant to sell fraudulent insurance, and that the preparation and e-mailing of false certificates provides sufficient evidence that defendants were aware of the enterprise and intended to participate.

Defendant argues in response that plaintiff cannot meet RICO's continuity requirement and cannot show that any predicate racketeering acts were committed.  With respect to the continuity requirement, defendant argues that any evidence or allegations of racketeering activity refer to events that took place after 2010.  Defendant further argues that the continuity requirement cannot be met because there is no threat of unlawful activity continuing into the future because the underlying insurance policies have been cancelled.  With respect to the underlying predicate acts, defendant argues that it did not commit wire fraud because plaintiff has not shown that any e-mail was the proximate cause of injury suffered by the plaintiff, and that no individual e-mail satisfies the wire fraud elements.  Finally, defendants argue that there is no evidence that they participated in a conspiracy to sell fraudulent insurance because plaintiff submitted no evidence that defendants knew what Allegiant intended to use the insurance certificates for, and because plaintiff did not receive money from other participants in the alleged fraudulent scheme.

The Court first addresses whether there is evidence of predicate acts of wire fraud. Wire fraud has three elements: "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." U.S. v. Green, 592 F.3d 1057, 1064 (9th Cir. 2010).  For the reasons enumerated in the section addressing the state law fraud claims, there is a genuine issue of material fact regarding whether defendants used wires – including but not limited to e-mail – in a scheme to defraud plaintiff as to how Allegiant was using the Arch insurance policy.  Defendants' argument that wire fraud cannot be the predicate offense in this case because the e-mailed certificates were not the proximate cause of the injury misconstrues RICO's proximate cause requirement.  RICO requires that a predicate offense be the proximate cause and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | | Date | October 15, 2012 |
|----------|--------------------------|--|------|------------------|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | | |

but-for cause of the plaintiff's injury, Hemi Group, LLC v. City of New York, N.Y., 130 S.Ct. 983, 989 (2010), and here the alleged fraudulent scheme carried out in part using wires was the cause of plaintiff's financial loss. There is no requirement that plaintiff show a causal connection between a particular use of a wire and financial loss, merely that the fraudulent scheme caused the loss.

The Court next addresses whether plaintiff meets the continuity requirement. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241 (1989). Plaintiff may demonstrate closed continuity by proving "a series of related predicates extending over a substantial period of time." Id. at 242. To prove open-ended continuity, plaintiff must prove that the predicate acts involved a threat of illegal conduct in the future. Id.

Here, plaintiff can demonstrate open-ended continuity because there is evidence that issuing the fraudulent certificates "had become a regular way of conducting business" at Archway, which satisfies the continuity requirement. See Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir. 1991); Northwestern Bell Telephone Co., 492 U.S. at 243. Continuity is established by showing that the "predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit," and here that threat is established because fraudulent certificates were issued frequently and for several entities under the 2010 policy. See Northwestern Bell Telephone Co., 492 U.S. at 242 – 243.

Last, the Court addresses whether there is a genuine issue of fact regarding whether defendants conspired to violate § 1962(c). As discussed above, the certificates issued by defendants provides evidence that defendants knew about Allegiant's plan to misuse the Arch policies. While the full extent of defendants' knowledge about Allegiant's misuse of the Arch policies is not clear, and the existence and nature of any agreement between defendant and Allegiant is unclear, there is evidence that defendants knowingly facilitated a fraudulent scheme. This provides a basis for denying summary judgment. U.S. v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1675 (CAS) (PJWx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | ARCH INSURANCE COMPANY V. ALLEGIANT PROFESSIONAL SERVICES, INC., ET. AL. | | |

### E.    PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff argues that there is a genuine issue of material fact as to whether defendants are liable for punitive damages due to oppression, malice, or fraud.  Cal. Civ. Code § 3294(a).  While defendants argue that there is no evidence that they intended to harm plaintiff, for the reasons mentioned above the Court finds otherwise.  There are genuine issues of material fact regarding whether defendants intentionally defrauded plaintiff and participated in a conspiracy to defraud plaintiff.  Therefore, the granting of summary judgment as to the claims for punitive damages would be inappropriate.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby DENIES in part and GRANTS in part defendants' motion for summary judgment.  Summary judgment on plaintiff's claim for damages against defendant Agnew under the UCL is granted.  Otherwise, summary judgment is denied.

IT IS SO ORDERED.

| | 00 | : | 15 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |